Rolland **LINDSEY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 14739.

United States Court of Appeals Ninth Circuit.

May 7, 1956.

Philip W. Schoel, Max R. Nicolai, Seattle, Wash., for appellant.

T. E. Munson, U. S. Atty., Juneau, Alaska, for appellee.

Before MATHEWS and FEE, Circuit Judges, and MATHES, District Judge.

MATHES, District Judge.

A jury found appellant guilty of three counts of statutory rape, §§ 65–4–12, A.C.L.A.1949, and three counts of sodomy, Id. 65–9–10, committed upon the person of a fifteen-year-old girl, his adopted daughter. The District Court sentenced appellant to a term of 12 years on each rape count and a term of 10 years on each sodomy count, all to run concurrently. This appeal is from that judgment.

At the trial, the Government called the girl as chief witness for the prosecution. On direct examination she testified in great detail as to the time, place and circumstances of the offenses charged in the indictment.

On cross-examination, in an effort to impeach her, the defense introduced in evidence certain of her letters and her affidavit, in which she in effect completely retracted all the allegations of sexual misconduct originally made when she first complained of appellant to the authorities.

To rehabilitate the witness, the Government called a duly qualified psychiatrist, who was permitted to testify: that on the basis of a complete clinical examination, including batteries of psychological and personal tests and a sodium-pentothal ("truth serum") test, it was his professional opinion that the girl was telling the truth when she repeated on direct examination the charges originally made by her; that in his opinion, as a psychiatrist, the girl was not a fabricator or a liar but was, considering the circumstances of her life, a normal girl of fifteen years who could not have gained the information she related concerning appellant's alleged sexual relations with her, without having personally experienced them.

Over objections of defense counsel, a tape recording of the psychiatrist's sodium-pentothal interview with the girl was received in evidence and played to the jury. Before the jury were allowed to hear this recording, however, the psychiatrist was permitted to explain briefly the use and operation of the sodium-pentothal interview, testifying that the drug "removes certain inhibitions so the individual will spontaneously say what the individual would have said without trying to exercise control over not saying it"; and further that when given "in a situation such as this it would be a highly reliable test."

The recording was then played to the jury, who by that means heard the girl repeat in detail the revolting story of how she had been sexually abused by appellant from the time she was nine years old. From the recording the jury also heard the psychiatrist, on more than one occasion during the interview, inquire of the girl whether she was telling the truth; and in each instance she replied in the affirmative.

The District Court admitted the recording, not as substantive evidence, but as a prior consistent statement to rehabilitate the witness "or to substantiate, sustain or corroborate the witness * * * to rebut any inference of impeachment."

Appellant specifies as error the rulings of the trial court: (1) allowing the psychiatrist to relate the results of the sodium-pentothal interview, and to express his opinion as to the girl's cred-

ibility predicated thereon; and (2) receiving in evidence and permitting to be played to the jury the recording made while the girl was under the influence of sodium pentothal.

In summary the objection is that the challenged evidence is incompetent, in that the trustworthiness and reliability of the sodium-pentothal examination is not recognized and vouched for by scientists; and that the opinion of the psychiatrist as to the credibility of the girl as witness invaded the ultimate province of the jury.

The Government urges on the other hand that the recording of the interview was properly received for the limited purpose of rehabilitating the impeached witness, being the equivalent of a prior consistent statement. Cf. McCormick, Evidence § 175 (1954).

There appear to be no Alaska cases dealing with the admissibility of such statements, and opinion in other jurisdictions is divided. See: 4 Wigmore, Evidence § 1126 (3d ed. 1940); Annotation 1942, 140 A.L.R. 21, 41.

The Federal Rules of Criminal Procedure provide that: " * * * The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Crim.P., Rule 26, 18 U.S.C.A.

Appellee urges that notwithstanding the majority view which holds such evidence inadmissible, 140 A.L.R., supra, at 22, the better rule and, in the absence of applicable federal statute or Alaska precedent to the contrary, the correct rule—the rule adopted by the trial judge to insure fair trial in the case at bar—is that prior consistent statements are admissible to rehabilitate a witness who has been impeached by prior contradictory statements.

■ There is scant basis in reason or experience to admit such statements,

except in cases where it affirmatively appears that the prior consistent statement was made at a time when the declarant had no motive to fabricate. Only then can such evidence be considered as having any reliable element of trustworthiness. See: Malone v. United States, 7 Cir., 94 F.2d 281, 287, certiorari denied, 1938, 304 U.S. 562, 58 S.Ct. 944, 82 L.Ed. 1529; Gelbin v. New York, N. H. & H. R. Co., 2 Cir., 1933, 62 F.2d 500, 502; Dowdy v. United States, 4 Cir., 1931, 46 F.2d 417, 424; DiCarlo v. United States, 2 Cir., 6 F.2d 364, 366, certiorari denied, 1925, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168; 140 A.L.R. supra at 80.

Here the Government's witness was subjected to psychiatric examination for the avowed purpose of determining whether the story originally told the authorities was the truth. Obvious motive existed then to repeat that story. So if the original story were indeed a fabrication, it would be unreasonable to hold that motive did not exist to fabricate during the test insofar as will could assert itself.

The Government presses the view that the will of the girl could not have asserted itself during the sodium-pentothal interview, and so, it is argued, there could have been no effectual motive at the time to fabricate; hence the recording of the interview was properly received in evidence as a prior consistent statement of the witness.

In order to accept the Government's view, we must be able to say affirmatively that the sodium-pentothal interview is a test of truthfulness that is not only trustworthy, but reliably so in all cases.

Although narcoanalysis in general, and the sodium-pentothal interview in particular, may be a useful tool in the psychiatric examination of an individual, the courts have not generally recognized the trustworthiness and reliability of such tests as being sufficiently well established to accord the results the status of competent evidence. See: United States v. Bourchier, Ct.Mil.App.1954, 5 U.S.C.M.A. 15, 17 C.M.R. 15; People v.

McCracken, 1952, 39 Cal.2d 336, 246 P.2d 913; State v. Lindemuth, 1952, 56 N.M. 257, 243 P.2d 325; People v. Cullen, 1951, 37 Cal.2d 614, 234 P.2d 1; Henderson v. State, 94 Okl.Cr. 45, 230 P.2d 495, 23 A.L.R.2d 1292, certiorari denied, 1941, 342 U.S. 898, 72 S.Ct. 234, 96 L.Ed. 673; People v. McNichol, 1950, 100 Cal.App.2d 554, 224 P.2d 21; Orange v. Commonwealth, 1950, 191 Va. 423, 61 S.E.2d 267; State v. Hudson, Mo.1926, 289 S.W. 920; McCormick, op. cit. supra § 175; Annotation 1952, 23 A.L.R.2d 1306, 1310; cf. People v. Jones, 1954, 42 Cal.2d 219, 266 P.2d 38; People v. Ford, 1952, 304 N.Y. 679, 107 N.E.2d 595 (dissenting opinion); People v. Esposito, 1942, 287 N.Y. 389, 39 N.E.2d 925, 142 A.L.R. 956.

In prosecutions where the defendant has voluntarily submitted himself to drug tests, and the results have indicated his innocence, the courts have rejected the evidence on the ground that it is "self-serving." People v. Cullen, supra, 234 P.2d 1; Orange v. Commonwealth, supra, 61 S.E.2d 267; State v. Hudson, supra, 289 S.W. 920; see: Silving, Testing the Unconscious in Criminal Cases, 69 Harv. L.Rev. 683 (1956); Despres, Legal Aspects of Drug-Induced Statements, 14 U. of Chi.L.Rev. 601 (1947).

The expected effect of the drug is to dispel inhibitions so the subject will talk freely, but it seems scientific tests reveal that people thus prompted to speak freely do not always tell the truth. See: MacDonald, Truth Serum, 46 J.Crim.L., C. & P.S. 259 (1955); Redlich, Ravitz and Dession, Narcoanalysis and Truth, 107 Am.J., Psychiatry, 586 (1951); Muehlberger, Interrogation Under Drug Influence, 42 J.Crim.L., C. & P.S. 513 (1951); Gagnieur, The Judicial Use of Psychonarcosis in France, 40 J.Crim.L. 370 (1949); Despres, supra, 14 U. of Chi.L.Rev. 601.

In an article jointly prepared by two of the faculty of Yale Medical School and two of the faculty of Yale Law School, the authors conclude:

"In summary, experimental and clinical findings indicate that only individuals who have conscious and unconscious reasons for doing so are inclined to confess and yield to interrogation under drug influence. On the other hand, some are able to withhold information and some, especially character neurotics, are able to lie. Others are so suggestible they will describe, in response to, suggestive questioning, behavior which never in fact occurred * * *. But drugs are not 'truth sera'. They lessen inhibitions to verbalization and stimulate unrepressed expression not only of fact but of fancy and suggestion as well. Thus the material produced is not 'truth' in the sense that it conforms to empirical fact." Dession, Freedman, Donnelly, and Redlich, Drug Induced Revelation and Criminal Investigation, 62 Yale L.J. 315, 319 (1953).

Another writer on the subject has gone so far as to state that:

"The intravenous injection of a drug by a physician in a hospital may appear more scientific than the drinking of large amounts of bourbon in a tavern, but the end result displayed in the subject's speech may be no more reliable * * *." MacDonald, supra, 46 J.Crim.L., C. & P.S. at 259.

Whatever may be the value as an aid to psychiatric examination or otherwise, we cannot affirmatively say that the sodium-pentothal interview is generally vouched for by scientific authority and so entitled to judicial recognition, through having gained "general acceptance in the particular field in which it belongs", Frye v. United States, 1923, 54 App.D.C. 46, 293 F. 1013, 1014, 34 A.L.R. 145, as a trustworthy truth-extracting procedure, which is reliably so in all cases.

Hence it was error to admit the recording of the sodium-pentothal interview, even as a prior consistent statement for the limited purpose of rehabilitating the impeached witness.

The question then arises whether the error was prejudicial; specifically whether the error was one which did "affect substantial rights" of the accused. Fed. R.Crim.Proc., Rule 52, 18 U.S.C.A.

In considering this question we need not decide whether, as the Government contends, a sodium-pentothal interview, conducted by an expert in the field of narcoanalysis may serve in whole or in part as a competent predicate for expert opinion as to credibility. See: Gendelman v. United States, 9 Cir., 1951, 191 F.2d 993, 997, certiorari denied, 1952, 342 U.S. 909, 72 S.Ct. 302, 96 L.Ed. 680; Wyatt v. State, 1950, 206 Ga. 613, 57 S.E.2d 914.

There has been, it is true, an increasing tendency to allow expert psychiatric opinion testimony as to the credibility and character traits of a witness, see: United States v. Hiss, D.C.S.D.N.Y., 88 F.Supp. 559, affirmed 2 Cir., 1950, 185 F.2d 822, certiorari denied, 1951, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683; State v. Armstrong, 1950, 232 N.C. 727, 62 S.E.2d 50; Curran, Expert Psychiatric Evidence of Personality Traits, 103 U.Penn.L.Rev. 999, 1004–1005 (1955); Psychiatric Evaluation of the Mentally Abnormal Witness, 59 Yale L.J. 1324 (1950); 3 Wigmore, op. cit. supra § 997 (3d ed. 1940); and the need is said to be especially great in prosecutions for rape where the guilt of the accused is often dependent solely upon the uncorroborated testimony of an under-age girl. See: Psychiatric Aid in Evaluating the Credibility of a Prosecuting Witness Charging Rape, 26 Ind. L.J. 98 (1950); Comment, Psychiatric Testimony for the Impeachment of Witnesses in Sex Cases, 39 J.Crim.L. 750 (1949); 3 Wigmore, op. cit. supra § 924(a).

But even if it were here assumed arguendo that the opinion testimony of the psychiatrist as to the credibility of the fifteen-year-old girl was properly admitted, cf. United States v. Spaulding, 1934, 293 U.S. 498, 506, 55 S.Ct. 273, 79 L.Ed. 617; Mutual Life Ins. Co. v. Frost, 1 Cir., 1947, 164 F.2d 542, 547–548; 7 Wigmore, op. cit. supra § 1920, and that adequate foundation for jury appraisal of the opinion required admission of testimony by the psychiatrist as to the conduct and results of the test, the first question would still remain whether permitting the playing of the recorded interview to the jury constituted prejudicial error which entitles appellant to a new trial.

For in the case at bar there was placed before the jury not only the opinion of the psychiatrist with a description of the test applied and the results found, but also a sound recording of the test itself.

Authorities who recommend use of the sodium-pentothal interview as an auxiliary procedure to full psychiatric examination, nevertheless caution that "a transcript of the interview should definitely not be admissible in evidence", because of the difficulty that a lay jury would have in properly evaluating this evidence. Dession, et al., op. cit. supra 62 Yale L.J. at 325; see also: Muehlberger, op. cit. supra 42 J.Crim.L., C. & P.S. at 525.

Having in mind the fact that the recording gave the jury only the sounds attendant upon the test, we think it may fairly be said that conducting the test itself in their presence could not have been more prejudicial, and might have been less so. To have seen it with their eyes and to have heard it with their ears as well would have brought such understanding as comes from two senses, as contrasted with only one.

Finally it must be noted that sodium pentothal was referred to several times during the trial as a "truth serum"; and the psychiatrist was permitted to testify that a witness is bound to tell the truth while under the influence of the drug.

We can only speculate as to the effect on the jury of hearing the recording in which the girl repeated her story while under the influence of a supposedly scientific "truth serum." It is quite possible the twelve lay jurors believed

**898**

that anything said by the witness during the test had to be the truth.

It is altogether possible too that the jury believed the charges made by the girl, without regard to the claimed scientific proof of her credibility.

Since we cannot say that "guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts", Bollenbach v. United States, 1946, 326 U.S. 607, 614, 66 S.Ct. 402, 406, 90 L. Ed. 350, we cannot say that the accused was accorded due process of law; and the error in receiving the recording of the sodium-pentothal interview must be held sufficiently prejudicial to entitle appellant to another trial. Cf. Lutwak v. United States, 1953, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593; Smith v. United States, 9 Cir., 1949, 173 F.2d 181, 186.

Reversed and remanded.