UNITED STATES of America
v.
Walter Lee PARMAN, Appellant.
No. 24526.

United States Court of Appeals,
District of Columbia Circuit.
Sept. 29, 1971.

Mr. Walter Lee Parman filed a brief pro se.

Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, John T. Kotelly, and C. Madison Brewer, Asst. U. S. Attys., were on the brief for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

PER CURIAM:

On April 12, 1965, appellant was indicted on four counts relating to the gruesome murder of Miss Shirley Ann Cary in Washington, D. C.[1] Appellant was tried to a jury, and following dismissal of counts two and three, was convicted of murder in the first degree, with a recommendation of life imprisonment, as well as assault with a dangerous weapon. On September 10, 1967, appellant was sentenced to concurrent terms of life imprisonment on the murder count and three to ten years for the assault. In a subsequent appeal appellant asserted several grounds for reversal, but this court, noting that "the scientific evidence amassed against Appellant was very strong, if not the strongest possible, outside of eyewitness testimony, needed to prove beyond a reasonable doubt that Appellant committed the crime," rejected his arguments and affirmed the conviction.[2]

Appellant filed, on January 22, 1970, a *pro se* petition for relief pursuant to 28 U.S.C. § 2255. On June 30, 1970, the District Court denied appellant's motion without a hearing. This appeal followed. We have considered all of appellant's contentions. We affirm.

■ Only a few of appellant's contentions warrant discussion. Invoking the well-known case of Sheppard v. Maxwell,[3] appellant contends that he, like Dr. Sheppard, was denied any possibility of fair trial because of the extensive and adverse newspaper publicity surrounding his case. We have examined the record on this point, including the exhibits attached to appellant's motion as examples of what he calls a "voluminous file of newspaper clippings and detective magazine stores," and find no abuse of discretion in the trial court's denial of hearing on this point. The clippings themselves are accurate accounts of developments during the trial and are not sensational in tone. They are a far cry from baseless charges and cries for revenge that the Supreme Court found so inflammatory in *Sheppard*. Moreover, the record reveals a scrupulous concern on the part of the trial court for the elimination of extrajudicial influences from the jury's deliberations. A case in point is the testimony of police informer Robert E. Barnes, which was reported in the local newspapers although taken out of the jury's presence. In order to make sure that the jury would not learn the contents of this testimony, the court ordered the jury to refrain from reading *any* news reports, regardless of subject-matter, for the next two or three days. (Tr. 759). This instruction was given in addition to the usual instruction regarding news reports of the trial itself. We find no basis for appellant's claim of prejudice due to outside publicity.[4]

On another matter of substance appellant claims that the court erred in permitting the jury to hear a tape of his confession given under the influence of sodium pentothal. To avoid any misunderstanding, we should make clear that the sodium pentothal interview was not introduced for the truth of the

---

1. Count one charged deliberate and premeditated murder; count two, felony murder while attempting to commit rape; count three, assault with intent to commit rape; count four, assault with a deadly weapon (biting with teeth).

2. Parman v. United States, 130 U.S.App. D.C. 188, 399 F.2d 559, cert. denied, 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968).

3. 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

4. Our conclusion is not affected by the fact that two of the jurors who participated in the verdict stated on voir dire that they had read or heard something about the case previously. These jurors were subjected to extensive questioning, and assured the court that they could render a fair and impartial verdict on the law and evidence.

statements made.[5] It did not have evidentiary standing as an admission or confession. It rather was offered by appellant's counsel as an aid to the jury in evaluating the testimony of defense psychiatrist on the issue of defendant's mental responsibility. Before the tapes were played the court instructed the jury that they were not to consider the tapes as evidence of appellant's guilt, but only as a means of deciding the insanity issue. Furthermore, before admitting the tapes into evidence, the court received assurances from appellant's counsel that appellant had consented to the taped interview.

■ The decision to admit tapes of a voluntary sodium pentothal interview on the issue of insanity is an evidentiary ruling that was not even reversible error, much less a reason for invoking Section 2255. What appellant now claims is that he was coerced into this interview in violation of his Fifth Amendment rights. On his claim of coercion, appellant cites certain exhibits attached to his 2255 motion, which indicate that he may have faked the interview and lied concerning his involvement in the murder. He contends that he was forced into the interview by virtue of the fact that his counsel refused to believe that appellant had not committed the murder, and insisted that no other defense except insanity be presented at trial. Appellant also claims that his attorney's actions deprived him of effective assistance of counsel because of inadequate exploration of his defenses on the merits.

We find these arguments patently frivolous and unworthy of hearing. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Appellant's own allegations show, not coercion, but that he submitted to the interview voluntarily. And the record and files refutes the ineffective assistance contention.

In the first place, insanity was not the only defense. As our prior opinion makes clear, defense counsel not only put the prosecution to its proof, and its burden of proving guilt beyond a reasonable doubt, but vigorously interposed substantial legal objections to the admissibility of evidence obtained without a warrant.

As to the insanity defense, appellant was not necessarily in the best position to judge his own sanity under the standards pertinent in the law. And even assuming, for sake of discussion, the accuracy of the allegation that counsel advised appellant that this was the only realistic line of defense, in view of the overwhelming circumstantial evidence of appellant's guilt, the petition offers no meaningful possibility that this conclusion could be undercut on grounds of ineffectiveness of counsel.

■ Appellant's claim to relief is vitiated by his inability to point to some other possible ground of exculpation in the face of the evidence against him. Appellant stresses that he had wanted to bring out at trial that there had been another rape-strangling in a nearby church a few days before Miss Cary's death, but this would plainly have been inadmissible. As to appellant's charges of a lack of proper investigation by defense counsel, while a hearing is indicated when a 2255 motion is grounded upon a plausible claim of attorney misconduct, such as wrongful inducement of a guilty plea, see United States v. Simpson, 141 U.S.App.D.C. 8, 436 F.2d 162 (1970), a court cannot engage in vague speculations about the kind of "investigation" defense counsel might have made in addition to the prodigious efforts established by the record. Appellant's counsel acted well within his professional responsibility when he concluded that the most effective representation of appellant lay in focusing on an effective insanity defense. Counsel cannot be held ineffective because defendant decided to interpret counsel's guidance as inducement to simulate during the sodium pen-

---

5. Compare Frye v. United States, 54 U.S.App.D.C. 46, 293 F. 1013 (1923); Lindsey v. United States, 16 Alaska 268, 237 F.2d 893 (1956).

tothal interview. In sum, there is not the slightest basis in allegation of fact, as contrasted with bald conclusion, for appellant's claim of inadequate representation or coercion. Neither these nor any other of appellant's claims warrant further hearing in the District Court.

■ Finally, there is the matter of appointment of counsel for the 2255 motion itself, and this appeal. Appellant complains to us that he was not represented by counsel in filing his 2255 motion. The record shows, however, that on February 3, 1970, the District Court issued an order appointing Russell Carpenter, Esq. as counsel for appellant on this motion. On April 5, 1970, appellant wrote to Mr. Carpenter, expressing surprise at his appointment, and ordering him to "remove your name from the court records as my counsel as soon as humanly possible!" Appellant continued, "In your motion to the court to withdraw, you are authorized to say that I, Walter Parman, will defend and conduct my complaints in person without the assistance of counsel." Two days later, the District Court issued an order vacating Mr. Carpenter's appointment and appointing Paul McArdle, Esq. as counsel in his place. On April 9, 1971, Mr. McArdle asked permission to withdraw from the case on the basis of appellant's clear intention to proceed *pro se*. The order vacating his appointment was issued on April 28. Appellant is in no position now to complain of lack of representation in the District Court.

We are satisfied that appellant was not hindered in the presentation of his claims on appeal through lack of representation by counsel. He is confined on this appeal to the record he made acting as his own counsel in the District Court. Perhaps that was an unwise decision on his part but we cannot say the law precludes him from defining and presenting the points to be raised on collateral attack. Appellant has an IQ of over 120 (Tr. 1794). We have considered the points raised in the District Court, both on our own analysis and in the light of appellant's briefs.

■ While the court has gone to great lengths to ensure a hearing in the District Court where the defendant raises legitimate issues of fact relating to fair trial, United States v. Simpson, *supra,* we conclude on careful consideration that Parman's contentions in the District Court were not sufficient to require a hearing. While appellant's pro se motion for counsel was pending before this court, he filed a 34-page brief challenging the denial of his 2255 motion, plus a 16-page reply to the Government's brief. While we consider his contentions to be insubstantial on the merits, his briefs are well written, with his points vigorously made and reflect wide research. We have undertaken our own analysis of the record and contentions before us. We are apprised of the problem involved and do not consider appointment of counsel warranted in the circumstances. We do not believe a defendant has an absolute right to counsel in a 2255 appeal. It is possible to create such a right, but if a court is ever to decide such an appeal without appointed counsel, it is appropriate to do so in the instant case, where the party is intelligent, and the points available on appeal are confined by the record he made on his own, rejecting the various counsel appointed in the District Court. Taking this into account along with the overwhelming evidence of guilt brought out against him at trial, we feel confident that no injustice is done in affirming the judgment of the District Court.

Affirmed.

FAHY, Senior Circuit Judge (dissenting specially):

Though appellant rejected appointment of counsel in the District Court, and no error should be attached to the absence of counsel in that court, he has requested in this court the appointment

of counsel to assist him.[1] I think he is entitled to counsel and that our decision accordingly should await the assistance which counsel might give to him and to the court. He is under sentence of life imprisonment for first degree murder. In the instant collateral attack upon his conviction and sentence he raises numerous points.

The Sixth Amendment to the Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This provision has been given generous scope by the Supreme Court in its interpretation of "criminal prosecutions." *See* Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (preliminary hearing); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (lineup); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (pretrial interrogation); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (direct appeal); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (trial). An appeal from denial of a motion under 28 U.S.C. § 2255 without a hearing, though in a formal sense a civil proceeding, is in substance comparable to a criminal proceeding within the intent of the Sixth Amendment provision for counsel. *See* Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1197–1205 (1970). In another aspect of appeals the Supreme Court has extended its holding of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), by guaranteeing indigents the right to a free transcript on appeal of denial of habeas corpus relief. Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966). The reasoning of the Court in *Long* and in the decisions there reviewed, involving post-conviction procedures subsequent to direct appeal, would seem to apply as well to the right to counsel, at least in the circumstances of this case, if not by reason of the Equal Protection Clause, then under the Due Process Clause read with the Sixth Amendment right to the assistance of counsel.

The constitutional question aside, however, even if appellant in a strict sense is not entitled to counsel by reason of the Constitution, I think denial of his request is a failure on our part to exercise a sound discretion.

I am unwilling to join with the court in finding that appellant in his brief filed *pro se* has explored every possible claim that might be raised on collateral attack by counsel who has studied the record, or that the points appellant has raised without counsel have been adequately briefed by him. I am reminded of the familiar aphorism regarding a lawyer who acts as his own counsel, even more acutely applicable to a prisoner who does so when under sentence of life imprisonment. It seems to me a derogation of the Great Writ—Section 2255 by analogy—to refuse a request for counsel on this appeal.

1. Under date of August 20, 1970, appellant wrote to the Chief Judge of our court in part as follows:

This petitioner, pro se hereby request[s] the United States Court of Appeals, to appoint counsel on my appeal from collateral-attack on my conviction in the District Court.

Since I have raised some major constitutional issues, and this is an appeal from a first degree murder conviction, and the trial transcripts are over 2500 pages, please appoint two counsels. . . .

As the record below will show, I am a pauper, without any means to pay counsel.

Respectfully submitted . . .
Walter Lee Parman