## REED v. COMMONWEALTH (two cases).

Court of Appeals of Kentucky.
May 9, 1952.

Lewis & Weaver, London, for appellant.
A. E. Funk, Atty. Gen., for appellee.

STEWART, Justice.

At the 1951 January term of the Laurel Circuit Court two indictments were returned against Prentice Reed, Ernest Reed and Carl Murphy charging that they "did unlawfully, maliciously, and feloniously, with force of arms, strike and wound John Cobb, Sr., (in indictment No. 572) and Nannie Cobb (in indictment No. 573) with a poker, large blocks of coal and other death dealing weapons" with intent to kill, but from which death did not ensue, in violation of KRS 435.170(2).

Upon the trial under indictment No. 572 all three defendants were found guilty of a lesser offense and their punishment was

fixed at one year in the county jail for each. Upon the trial under indictment No. 573 Prentice Reed was convicted and his punishment was fixed at five years in the penitentiary, whereas the other two defendants were found guilty of a lesser offense and their punishment was fixed at a fine of $100 each and six months in the county jail. Prentice Reed alone prosecutes an appeal from both judgments.

As the appellant in each case is the same person and as the offenses charged are practically identical and the evidence is substantially similar, we shall dispose of both cases in one opinion.

On December 13, 1950, at about 11:00 a. m., near Lily in Laurel County, appellant, Prentice Reed, and Carl Murphy met Clarence Wilburn and John Cobb, Jr., hereinafter referred to as Junior, and they proceeded at once to the nearby home of Junior's parents, Nannie Cobb, age 64, and John Cobb, age 75. Here they drank a considerable quantity of whiskey they already had on hand; and, when this liquor gave out, they went to another place in the neighborhood for an additional supply. Around noon, well organized from the standpoint of liquor, they returned to the Cobb home and ate dinner. After finishing their meal they started hauling coal for the Cobb family's use. On the second trip to the mine, Ernest Reed, a brother of Prentice, joined the group. On the third and last trip more whiskey was procured and consumed. It was now near suppertime and the boys accepted Junior's invitation to return to the Cobb home for the evening meal. Arriving there, appellant was the first to enter the house and he went into the room where Nannie Cobb was sitting by the fire, drinking a cup of coffee. According to Nannie, he almost immediately came out with a big oath and said, "If you can drink, I can, too", and he thereupon pulled out a bottle of whiskey and drank the contents thereof. At this juncture, the other three boys came into the house and Junior went into an adjoining room to change his clothes.

Murphy turned the radio on to listen to the "Beulah Show" but shut it off a few minutes later at the request of John Cobb, Sr., who had just entered the room but who soon went into the kitchen. Before long the Reeds and Murphy, in the words of Nannie, began "cursing and fisting" each other and Nannie said she then laid her hand on appellant's shoulder and told him to go home and take the others with him. She said that at this point Junior entered the room and Murphy jumped or lunged at him, and, at the same time, appellant hit her with his fists and knocked her to the floor. When she attempted to raise up she got a lick under her chin which broke her teeth. After she finally got up, she saw that appellant, Ernest Reed, and Murphy had hold of Junior. John Cobb, Sr., attracted to the fracas, came out of the kitchen, picked up a fire poker and hit Murphy to knock him loose from Junior. A few seconds later, the elder Cobb was struck in the head by some one from behind, and then Murphy hit him with a block of coal on the head. Nannie testified Ernest Reed struck her with a poker and appellant kicked her in the back, knocking her into the kitchen where he, following her, kicked her twice more. She then crawled out of the kitchen and outside over to the cellar.

The foregoing account is the view most favorable to the Commonwealth, and is all of the evidence produced in chief. Every one was hurt in this fight to some degree.

Prentice Reed, testifying in his own behalf, said he had come in from hauling coal that day and was seated in a chair near Nannie when Junior suddenly burst into the room and struck him with a poker. This lick knocked him to the floor; then Junior jumped on him and began choking him; and next Ernest got Junior off of him, after which Junior went out the front door. Meanwhile, the elder Cobb and Murphy were scuffling in the kitchen, but they soon quieted down, and Prentice and Carl then left through the kitchen door to be joined by Ernest a few minutes later. Securing transportation, the two Reeds and Murphy traveled to London to receive treatment for their wounds. Prentice denied that he ever at any time struck Nannie Cobb, or that he ever hit John Cobb, Sr., with his

fists or any object, or that he ever at any time had a poker or any weapon of any type in his hands that night.

Ernest Reed and Carl Murphy, with some variations, gave versions of the disturbance that correspond in the main to appellant's evidence. It was uncontradicted that the three defendants had known the Cobb family for some years; that they had always been good friends of all the members of the family; and that they had expected no trouble on the occasion of their visit to the Cobb home. One witness said he saw Ernest with a stick in his hand after Nannie had been knocked down. No one testified that appellant ever fought with anything but his fists and feet.

Appellant moves for an appeal, urging a reversal of the judgment whereby he was convicted under indictment No. 572, contending the court erred (1) in admitting incompetent evidence; (2) in giving "Instruction No. 2"; and (3) in using the word "club" throughout this instruction.

Appellant seeks a reversal of his conviction under indictment No. 573, claiming the court erred (1) in giving "Instruction No. 1" and "Instruction No. 2"; (2) in admitting incompetent evidence; and (3) because the verdict is against the law and the evidence and is the result of prejudice or passion, or both.

We have concluded the judgments under both indictments must be reversed because we believe appellant's attack upon the foregoing instructions has merit. Consequently, we deem it unnecessary to discuss the other grounds raised on this combined appeal.

Both indictments charged appellant and his codefendants with the crime denounced under KRS 435.170(2) which provides so far as we need consider as follows:

"Any person shall be confined in the penitentiary for not less than two nor more than twenty-one years who:

\* \* \* \* \* \*

"(2) Willfully and maliciously cuts, strikes or stabs another with a knife or other deadly weapon with intent to kill, if the person stabbed, cut or bruis-ed does not die from the wound; \* \* \*."

Turning our attention to Instruction No. 2, about which complaint is made under indictment No. 572, the court submitted to the jury the duty to convict if they should conclude that the striking and wounding was done with the weapons and "in the manner described in Instruction No. 1" and "\* \* \* Prentice Reed was present at the time (with Ernest Reed and Carl Murphy) and near enough to do and did aid, counsel, advise, or encourage said defendants to so strike, and wound the said John Cobb, Sr., and that said aiding, counseling, advising, or encouraging, if any, was done in sudden heat and passion without malice or in sudden affray, \* \* \*."

We think it was proper, as was done under the circumstances here, to give an instruction on common-law assault and battery because it is a degree of the offense charged in KRS 435.170(2). See McIntosh v. Commonwealth, 275 Ky. 126, 120 S.W.2d 1031. However, in a prosecution that has its foundation upon wilful and malicious striking and wounding with a deadly weapon with intent to kill, an instruction authorizing a conviction, if such "was done in sudden heat and passion without malice or in sudden affray", was in reality the submission of an offense condemned by KRS 435.180, which latter offense is not a degree of the crime. embraced by KRS 435.170(2). See Delph v. Commonwealth, 300 Ky. 722, 190 S.W.2d 340; Marks v. Commonwealth, 223 Ky. 692, 4 S.W.2d 711; Burgess v. Commonwealth, 176 Ky. 326, 195 S.W. 445. The word "strike" appearing in KRS 435.170(2) is not included in KRS 435.180. Therefore the latter section does not cover the lower degree of the offense of *striking* with a deadly weapon with an attempt to kill. For the reasons recited the court committed a reversible error in giving the foregoing instruction.

Instruction No. 1, given under indictment No. 573, told the jury that it was their duty to convict appellant, Prentice Reed, and his codefendant below, Ernest

Reed, if they did wilfully and maliciously and not in self-defense or the self-defense of any of the codefendants "assault, strike, *beat* and *kick* Nannie Cobb with a poker or other deadly weapon upon or over her head, or both, with the intent to then and there kill the said Nannie Cobb * * *." The court then proceeded to define *fists* and *feet* along with a poker as a deadly weapon.

We have many times held that hands and feet are not deadly weapons within the meaning of KRS 435.170(2). See Bradley v. Commonwealth, 314 Ky. 457, 236 S.W.2d 266; McIntosh v. Commonwealth, supra; Thomas v. Commonwealth, 86 S.W. 694, 27 Ky.Law Rep. 794. Instruction No. 2 submitted under indictment No. 573 employs practically the same language as Instruction No. 2 heretofore discussed under indictment No. 572, and, for the reasons we have already shown, it should not have been given. Therefore, the court committed reversible error in giving Instruction No. 1 and Instruction No. 2 under indictment No. 573.

After a careful review of the entire record in this case we have reached the conclusion that an instruction under KRS 435.170(2) was not justified under the evidence developed against appellant. It is conclusively established that he and his two codefendants went to the Cobb home in a friendly spirit and at the invitation of Junior. The weapons that were first used were in the possession of Junior and John Cobb, Sr. There appears to be a lack of an intent to kill upon the part of appellant, and such an intent is a prerequisite for a conviction under the crime charged. According to the testimony, appellant never had a weapon of any sort in his hands at any time, although he did use his "fists and feet" freely. Much of the time during the fight he was on the floor being choked and beaten over the head with a poker by Junior; yet, for some reason, the jury fixed his punishment at five years in the penitentiary, while the other defendants received only six months in the county jail and a $100 fine each, under indictment No. 573. Such a verdict appears to be against both the law and the evidence and strongly indicates passion and prejudice on the part of the jury.

Wherefore, the motion for appeal is sustained and the judgment is reversed under indictment No. 572 and the judgment is also reversed under indictment No. 573, with directions that a new trial be had in each case in conformity with this opinion.