Denver **WILLIAMS** and **Lindbergh Robinson, Appellants,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 19, 1971.

Dan Jack Combs, Combs & Anderson, Pikeville, for appellants.

John B. Breckinridge, Atty. Gen., James M. Ringo, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Denver Williams and Lindbergh Robinson appeal from a judgment entered pursuant to a verdict finding them guilty of maliciously shooting into a motor vehicle occupied by one Jimmy Phillips. They were sentenced to two years' imprisonment, the minimum penalty allowable under the applicable statute, KRS 435.170(4).

They contend that the trial court erred in failing to instruct under KRS 435.180, 435.190 and 435.200 as lesser degrees of the offense charged and in failing to instruct in writing that a conviction required a unanimous verdict.

In May of 1969 there was trouble in the Johns Creek area of Pike County arising from an effort to unionize certain coal mining operations, including those of the Johns Creek Elkhorn Coal Corporation (hereinafter called the company). The appellant Williams operated a country market across a public road and several hundred yards down the creek from a coal tipple and loading dock owned by the company. He was sympathetic toward the union men and his store became sort of an unofficial gathering place for them. Williams and his wife and children lived in the store building. During the night of May 30, 1969, some unidentified person set off a charge of dynamite in front of this building and caused considerable damage to it. Moments later a union hall located a mile or so down the highway also was dynamited. According to the evidence these events were not the first signs of violence, but

for our purposes here it is immaterial who started it. In any case, the explosions during the night of May 30 produced a lively degree of apprehension on the part of Williams.

On the next night, May 31, Williams and his friends were prepared against a renewal of the attack. Some 15 or 20 men convened at his place to stand guard, and they were well armed. At about 11:15 on this same night Jimmy Phillips, an employe of the company, who lived four or five miles up the creek from Williams, decided to go abroad. He drove his car down to the aforementioned coal dock and proceeded to kill some time with the night watchman and another company employe named Prater. After a while he and Prater, having "decided to go somewhere," went to Freeburn and visited Prater's sister, then got some beer and came back to the coal dock at about 2:00 A. M. Phillips was having trouble with his automobile in that when it got hot it would stop running, so when he returned to the coal dock the night watchman did a little tune-up work on it. At some time after 3:00 A. M. Phillips drove Prater to his home, which was a short distance down the road toward the Williams market, and then, instead of going back up the road toward his own home, continued past the Williams store to the place where the union hall had been blown up on the night before, at which point he turned around and started back. As fate would have it, his car engine stalled as he approached the Williams store, and he was forced to stop (or was in the act of stopping) on the side of the road within 50 yards of the enemy. According to Phillips' story, they opened fire at once. Several bullets struck his automobile and he was forced to flee in the dark. One of the shots, he said, destroyed the light switch and extinguished the lights on the car.

Williams and his co-appellant Robinson admit the shooting. They say, however, that Phillips had been riding up and down the highway in front of the store all night long (which Phillips denies), and that on the last occasion he came up with his lights off, stopped and fired a shot in their direction, whereupon they returned fire. The Williams group promptly reported the incident by telephone to the state police, and a trooper came to investigate. On his way he met Phillips walking down the highway and took him to a place of safety. Upon the trooper's arrival Williams was able to start Phillips' automobile and move it off the road, and Phillips later drove it away.

The trial court gave two instructions on the basic law of the case. One was an instruction under KRS 435.170(4), as charged in the indictment, and the other was a defensive instruction on the right to use force in defense of one's person, family or property. Only two alternatives were possible, guilty or not guilty. The verdict read as follows:

"We, the jury, find the defendants guilty as charged, and fix the penalty at two (2) years in the reformatory. But we wish for a plea of leniency for the defendants.

/s/ George H. Bailey
Foreman"

Whether the verdict was unanimous is not disclosed by the record. It was signed only by the foreman, and the jurors were not polled. We have held that if a unanimity instruction has not been requested and there is no demand for a poll the point is waived. Bradley v. Commonwealth, Ky., 439 S.W.2d 61, 64 (1969); Freeman v. Commonwealth, Ky., 425 S.W. 2d 575, 579 (1968). As in *Bradley*, however we reiterate that the instruction should be given in writing.

The jury's expressed desire for clemency strongly suggests that an instruction on a lesser crime would have resulted in a lesser penalty, which means that if there was an error in failing to give such an instruction or instructions it was prejudicial.

The statutes in question have been arranged in sequence only since the statutory revision of 1942. Before that time they were widely scattered and from time to time some had been patched and amended in piecemeal fashion, with the result that even when put together they are a tangled mess.

KRS 435.170 (old §§ 1166, 1227a) makes it a felony to commit any of the following acts "willfully and maliciously":

(1) Shooting at another person, with intent to kill.

(2) Cutting, striking or stabbing another person.

(3) Administering poison to another person.

(4) Shooting or throwing a missile at or into a railroad train, railroad station, steamboat or motor vehicle occupied by any person, or a building where people live or frequent.

(5) Presenting a gun with intent to do one of the things mentioned in KRS 435.170(4), other than shooting at or into a building.

(6) Aiding in the commission of one of these offenses.

KRS 435.180 (old § 1242) makes it a misdemeanor to shoot, shoot at, or to cut, thrust or stab with a knife or other deadly weapon, another person in a sudden affray or in sudden heat of passion without previous malice, and not under circumstances falling within KRS 435.190.

KRS 435.190(1) [old § 794] makes it a misdemeanor to shoot *recklessly* at or into a railroad train or station occupied by any person or any motor vehicle (whether occupied or not) on a public highway.

KRS 435.200 (old § 1308) makes it a misdemeanor to draw a deadly weapon upon or at another person or to flourish or discharge a deadly weapon in certain places, including public highways.

■■ The record indicates that objections to the instructions were first presented by the *motion for a new trial, which did not mention KRS 435.190.* Hence that particular question may not be reviewed. See Stanley's Instructions to Juries, § 797 (1969–70 Supp.), and cases therein cited. But even if it were, it is settled law that when a defendant admits having taken deliberate aim and intentionally fired at another person he is not entitled to an instruction on the theory of "reckless" shooting. See Thacker v. Commonwealth, Ky., 306 S.W.2d 292 (1957), and Profitt v. Commonwealth, Ky., 281 S.W.2d 898, 901 (1955), in which it was said that "we have found no case where bad feeling existed and deliberate aim was taken in what was claimed to be self-defense, where this court said the accused was entitled to an instruction on the reckless use of a firearm." These two cases dealt with KRS 435.200 rather than KRS 435.190, but by parity of reasoning the same distinction would have to be made with respect to any statute based on reckless conduct. That clears the deck in this case but for the contention that an *instruction should have been given under KRS 435.180 on the theory of sudden affray or sudden heat of passion, without previous malice.*

It will be noticed that except for the word "striking" KRS 435.180 covers the same physical acts as KRS 435.170(1) and (2) if they are done intentionally but without previous malice. This anomalous omission of "striking" leaves striking and wounding without previous malice within the ambit of common law assault and battery but outside the statutes under discussion, so that in a malicious striking and wounding prosecution the defendant is not entitled to an instruction under KRS 435.-180 as a lesser degree of the offense proscribed by KRS 435.170. Roberson's New Kentucky Criminal Law and Procedure §§ 688, 695, 1099, pp. 893, 899, 1319; Reed v. Commonwealth, Ky., 248 S.W.2d 911, 913 (1952). The point is of importance here because it illustrates that not all of the acts

enumerated in KRS 435.170 are covered in KRS 435.180. The Commonwealth contends that KRS 435.180 simply does not embrace any of the physical acts described in KRS 435.170(4) and therefore does not warrant an instruction on shooting into an occupied motor vehicle intentionally but without previous malice. To put it simply, the argument is that shooting at a person cannot be a degree of shooting at or into an inanimate object, because the lesser offense would require proof of a factual element not necessary to the greater. See 41 Am. Jur.2d 1074 (Indictment and Information, § 313). The conclusion deducible from this premise is that the intentional shooting at or into one of the places or conveyances specified by KRS 435.170(4) in a sudden affray or in sudden heat of passion, but without previous malice, is not a crime at all unless the circumstances are such that it amounts to a common law assault.

From the standpoint of plain logic we cannot fault the Commonwealth's argument, but the outcome disturbs us. Whereas the omission of "striking" from what is now KRS 435.180 probably resulted from inadvertence, cf. Burgess v. Commonwealth, 176 Ky. 326, 195 S.W. 445, 446 (1917), it occurs to us that the acts enumerated in KRS 435.170(4) were left out because they represent a specific type of conduct which ordinarily does not arise from a sudden affray or in sudden heat of passion. Obviously, for example, that would be so with respect to poisoning, the act denounced by KRS 435.170(3). And it would be difficult to envision one's purposely shooting at a passing train in sudden heat of passion. Usually, though certainly not always, acts of violence committed in sudden heat of passion or battle are aimed at someone's person. This case presents a good example. As a matter of fact, the indictment as originally drawn charged the appellants with shooting at Phillips *and* shooting into an automobile occupied by him, and the Commonwealth was required to and did elect between the two theories by choosing to proceed under KRS 435.170

(4) rather than KRS 435.170(2). This proved to be an unfortunate move for the appellants in that they would not be in the predicament now being discussed had the Commonwealth been allowed to go on and shoot both barrels at once. Nevertheless, we think simple justice requires that they be bailed out.

When a person shoots at or into one of the places or things mentioned in KRS 435.170(4) with the intention of striking or frightening some specific person or persons there present or thought to be present, his action is so close to being the same thing as shooting at the other person or persons themselves that if there is evidence to suggest it was done in a sudden affray or in sudden heat of passion, and without previous malice, it is our opinion that KRS 435.180 may and should be construed as requiring an instruction on a lesser degree of the offense described in KRS 435.170(4). For that reason we hold that the failure to give such an instruction in this case was a prejudicial error.

The judgment is reversed with directions for a new trial.

MILLIKEN, C. J., and HILL, OSBORNE, REED and STEINFELD, JJ., concur.