RODRIGUEZ, COMMONWEALTH vs., 100 Mass. App. Ct. 663

 
 COMMONWEALTH vs. JASON RODRIGUEZ.

100 Mass. App. Ct. 663
 October 7, 2021 - January 27, 2022

Court Below: Superior Court, Bristol County
Present: Green, C.J., Singh, & Grant, JJ.

 

Armed Assault in a Dwelling. Larceny. Assault and Battery. Dangerous Weapon. Firearms. Practice, Criminal, Argument by prosecutor.

At the trial of indictments charging the defendant with, inter alia, armed assault in a dwelling, G. L. c. 265, § 18A, the evidence was sufficient for a jury to find that the assault occurred in a "dwelling house," where a secured common hallway (in which the incident took place) that was an exclusive area within the victim's multiunit residential building constituted part of the victim's place of habitation and, thus, his dwelling house [665-666]; further, the evidence was sufficient for a jury to find that the defendant was armed with a dangerous weapon, where the Commonwealth was not required to prove that the dangerous weapon used was a firearm, and where duct tape, even though not dangerous per se, could be considered dangerous if used by the defendant in a way that was capable of producing serious bodily injury [666-668].

At the trial of indictments charging the defendant with, inter alia, larceny from the person, G. L. c. 266, § 25 (b), the evidence was sufficient to show that the defendant stole property of the victim that was within the victim's control, where the specific property (cell phone) referenced in the indictment was mere surplusage, and where a rational jury could have found that the defendant stole any one or more of the victim's possessions, including the jewelry and money that he usually kept in the top drawer of his dresser, which was found empty after the incident. [668-669]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the prosecutor's closing argument, where the prosecutor simply marshaled the evidence that was properly before the jury, and where, even assuming that the prosecutor improperly appealed to the jury's sympathy, those portions of the argument were only a few sentences in a lengthy closing. [669-670]

INDICTMENTS found and returned in the Superior Court Department on November 1, 2018.

 The cases were tried before William F. Sullivan, J.

Brad P. Bennion for the defendant.

Stacey L. Gauthier, Assistant District Attorney, for the Commonwealth.

 Page 664 

 GREEN, C.J. A Superior Court jury convicted the defendant of armed assault in a dwelling, see G. L. c. 265, § 18A; larceny from the person, see G. L. c. 266, § 25 (b); and assault and battery, see G. L. c. 265, § 13A (a). On appeal, the defendant challenges the sufficiency of evidence on the armed assault in a dwelling and larceny from the person convictions. Additionally, he contends that the prosecutor improperly inflamed the jury in his closing argument, warranting a new trial. We discern no cause to disturb the convictions, and affirm, addressing the defendant's claims in turn.

 Background. [Note 1] On the morning of July 9, 2018, as he was returning to his apartment on the third floor of a multiunit apartment building in New Bedford, the victim was attacked by the defendant and an accomplice, Juan Morales, inside his apartment building. The victim struggled with his assailants, and the three fought in the hallways on the second and third floors. During the fight, the defendant obtained the victim's apartment keys and attempted to open the victim's apartment door on the third floor. In the apartment at the time was the victim's girlfriend. When she opened the apartment door, she saw the defendant and Morales attempting "to tape [the victim] up with duct tape." She also heard a gunshot in the hallway, which she attributed to the defendant.

 While Morales and the victim remained in the hallway, the defendant entered the victim's apartment, and the victim's girlfriend observed that the defendant had a gun in his hand. The defendant proceeded to take several items from the top drawer of a dresser in the victim's bedroom, which typically contained the victim's money and jewelry. After emptying the drawer, the defendant and Morales drove off in a white Honda Civic. Everything in the top drawer was gone after the defendant left. The victim's girlfriend also discovered that the victim's iPhone cell phone (iPhone) was missing after the defendant left.

 The victim suffered several injuries from the fight, including bleeding from his mouth, a head injury, scratches to his neck, and a missing tooth. While securing the crime scene, the police found a spent shell casing in the hallway in front of the victim's apartment. The following day, the police executed a search of the white Honda Civic and found the victim's apartment keys in the 

 Page 665 

center console cupholder.

 Discussion. 1. Armed assault in a dwelling. A "[c]onviction under G. L. c. 265, § 18A, of armed assault in a dwelling requires proof of three elements: (1) entry of a dwelling while armed [with a dangerous weapon;] (2) an assault on someone in the dwelling; and (3) a specific intent, accompanying the assault, to commit a felony." Commonwealth v. Donoghue, 23 Mass. App. Ct. 103, 111-112 (1986), cert. denied, 481 U.S. 1022 (1987). The defendant challenges the sufficiency of the evidence that the assault took place in a dwelling, and that he was armed with a dangerous weapon. We review the evidence "in the light most favorable to the prosecution," to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

 a. Assault in a dwelling house. The defendant contends that because the assault took place in the hallway outside the victim's apartment unit, it did not occur in a "dwelling house" as required under G. L. c. 265, § 18A.

 Though G. L. c. 265, § 18A, does not define dwelling house, the term has been construed in cases involving other similar statutes, including G. L. c. 266, § 14, directed to the crime of burglary. See Commonwealth v. Goldoff, 24 Mass. App. Ct. 458, 459-464 (1987); Commonwealth v. Correia, 17 Mass. App. Ct. 233, 234-236 (1983). As the Supreme Judicial Court recently established in Commonwealth v. Tinsley, 487 Mass. 380, 388-389 (2021), the meaning of "dwelling place of another" for purposes of armed home invasion is essentially synonymous with dwelling house as used in the various burglary statutes.

 In light of that synonymy, we look to the meaning of dwelling house under the burglary statutes to interpret the same term under G. L. c. 265, § 18A. See Commonwealth v. Ricardo, 26 Mass. App. Ct. 345, 355-356 (1988) (applying meaning of dwelling house in burglary statutes to statute concerning armed assault in dwelling). See also Commonwealth v. Doucette, 430 Mass. 461, 465-467 (1999) (discussing "dwelling place" in context of G. L. c. 265, § 18C, concerning armed home invasion).

 The case most factually analogous to the present case is Goldoff, 24 Mass. App. Ct. at 463, which held that a "secured common hallway" in a multiunit residential building is a part of the dwelling house under G. L. c. 266, § 14. Goldoff interpreted dwelling house as "areas within a person's place of habitation but 

 Page 666 

which are beyond his exclusive control," id. at 462, and reasoned that the secured hallway was part of the victim's place of habitation, as it was cut off from public access. See id. at 463 ("These areas are not open to the public; they comprise a portion of each occupant's dwelling house" [citation omitted]).

 Applying the broad meaning of dwelling house under Goldoff to the present case, we conclude that a secured hallway accessible only to residents and building staff in a multiunit residential building is part of one's dwelling house under G. L. c. 265, § 18A. Like the assault in Goldoff, 24 Mass. App. Ct. at 459, the assault here took place in a locked hallway, an exclusive area within the residential building through which residents reached their apartments. As such, the hallway was part of the victim's place of habitation, or dwelling house.

 Contrary to the defendant's claim, the fact that he may have been lawfully present in the hallway because a resident let him in does not change the analysis. The central question is whether the secured hallway constituted the victim's "place of habitation," Goldoff, 24 Mass. App. Ct. at 462, not how the defendant gained entry to that place. The defendant's separate contention that we should adopt the narrower definition of dwelling employed for purposes of self-defense, see, e.g., Commonwealth v. Jefferson, 36 Mass. App. Ct. 684, 687 (1994), is unavailing. As Goldoff, supra at 461, stated, "[t]he restricted definition of 'dwelling house' as applied to apartments given by these cases is consistent with the limited purpose, self-defense, of the express and implied statutory exemptions," and that limited purpose has no relevance to the present case. [Note 2] Since the secured hallway constituted a part of the victim's dwelling house, sufficient evidence supported the defendant's conviction.

 b. Dangerous weapon. The defendant contends that there was insufficient evidence that he was armed with a dangerous weapon. The jury had two potential instruments they could have found to constitute a dangerous weapon: a firearm or duct tape. The defendant claims that the Commonwealth was required to prove

 Page 667 

 that he was armed with a firearm because the indictment identified a firearm as the dangerous weapon at issue. He also argues that the Commonwealth failed to do so, since the jury acquitted him of all firearm possession charges. [Note 3] Alternatively, the defendant claims that even if the Commonwealth permissibly could have relied on the defendant's use of duct tape as the dangerous weapon, the evidence was insufficient for a rational jury to find that he used duct tape in a dangerous manner.

 First, though the jury acquitted the defendant of the firearm charges, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient for a rational jury to conclude that the defendant was armed with a firearm. The victim's girlfriend testified that she heard the defendant fire a gun in the hallway, and another resident testified that he heard a gunshot. The victim's girlfriend also testified that she saw the defendant with a firearm when he entered the victim's apartment. Additionally, the police found a spent shell casing on the hallway floor in front of the victim's apartment. From this evidence, a rational jury could have found that the defendant had a firearm when he entered the victim's apartment.

 The defendant claims that the jury's acquittal of him on the firearm charges compels a conclusion that the evidence failed to establish that he was armed with a firearm. "However, the rule is well established in criminal cases that mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury." Commonwealth v. Scott, 355 Mass. 471, 475 (1969).

 In any event, we are unpersuaded by the defendant's claim that the Commonwealth was required to prove that the defendant was armed with a firearm. The reference to the firearm in the indictment was mere surplusage, as the specific weapon is not an element of the crime. See Commonwealth v. Grasso, 375 Mass. 138, 139 (1978) (in complaint charging illegal firearm possession, "any allegation as to the length of the barrel was surplusage"); Commonwealth v. A Juvenile, 365 Mass. 421, 439-440 

 Page 668 

(1974) (description of murder weapon in indictment is "superfluous"). [Note 4]

 We consider the Commonwealth's alternative theory that the dangerous weapon element could be satisfied by evidence of the defendant's use of duct tape. "Weapons which are not dangerous per se, but which may be used in a dangerous fashion, may also be 'dangerous weapons.'" Commonwealth v. Appleby, 380 Mass. 296, 304 (1980). Weapons are dangerous as used if "the object, as used by the defendant, is capable of producing serious bodily harm." Commonwealth v. Marrero, 19 Mass. App. Ct. 921, 922 (1984), citing Appleby, supra. The evidence showed that the defendant used duct tape in a dangerous manner. The defendant taped the victim around his face and on his wrist, which could dangerously inhibit movement and breathing, and could also inflict injuries such as bleeding, bruising, and abrasions. See, e.g., Commonwealth v. Mattei, 455 Mass. 840, 844 (2010) (duct tape used as dangerous weapon); Commonwealth v. Cruz, 430 Mass. 182, 195 (1999) (same). There was evidence that the victim suffered numerous injuries in the area where the defendant put the duct tape on him, and thus the evidence was sufficient for a reasonable jury to treat duct tape as a dangerous weapon in convicting the defendant. [Note 5]

 2. Larceny from the person. The defendant argues that there was insufficient evidence to support his larceny conviction because the evidence did not establish that he stole the victim's iPhone, and the iPhone was described in the indictment as the taken property.

 As an initial matter, as with the reference to a firearm discussed above, the reference to the iPhone in the indictment was mere surplusage. Cf. Commonwealth v. Alvarez, 90 Mass. App. Ct. 158, 163 (2016) ("larceny certainly requires proof that 'property' was taken, [but] the specific nature of the 'res converted is not an 

 Page 669 

element of [the offense]'" [citation omitted]). Therefore, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient so long as it showed that the defendant stole any property of the victim that was within the victim's control. [Note 6]

 A rational jury could have found that the defendant stole any one or more of the victim's possessions, including his iPhone, jewelry, money, and keys. The victim's girlfriend testified that the victim usually kept his money and jewelry in the top drawer, and that the drawer was empty after the defendant grabbed its contents and left. Also, she stated that the victim's iPhone was discovered missing after the incident. Based on this evidence, the jury could have inferred that the defendant stole the victim's jewelry, money, and iPhone. Additionally, as the victim's apartment keys were subsequently found in the white Honda Civic, the jury could have inferred that the defendant stole them as well.

 3. Prosecutor's closing argument. Lastly, the defendant argues that the prosecutor impermissibly inflamed the jury's emotions during closing argument. As the defendant did not object at trial, we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Grandison, 433 Mass. 135, 141-142 (2001). The defendant claims that the prosecutor's reference to testimony by the victim's mother, which highlighted her emotional state on the witness stand and the victim's absence since the incident, was improper.

 Contrary to the defendant's characterization, the prosecutor's comments simply marshaled the evidence that was properly before the jury, see Commonwealth v. Beaudry, 445 Mass. 577, 587 (2005), and were based on what the jury "saw and heard" (citation omitted). Commonwealth v. Sanchez, 405 Mass. 369, 376 (1989). He did not urge the jury to decide based on sympathy toward the victim or his mother, nor did he misstate the evidence. Even if portions of the argument appealed to the jury's sympathy, they were only a few sentences in a lengthy closing argument. Thus, the error, if any, did not rise to a substantial risk of a

 Page 670 

 miscarriage of justice.

Judgments affirmed.

FOOTNOTES
[Note 1] We summarize the facts the jury could have found, viewed in the light most favorable to the Commonwealth. See Commonwealth v. Miranda, 458 Mass. 100, 113 (2010), cert. denied, 565 U.S. 1013 (2011). 

[Note 2] Additionally, as Goldoff, 24 Mass. App. Ct. at 461-462, noted, the central inquiry in self-defense claims, as well as warrantless search and seizure claims, is whether the defendant had exclusive control over the area where the relevant conduct took place. In contrast, whether the victim had exclusive control over the relevant area does not determine whether an area is within a dwelling house for purposes of burglary or armed assault in a dwelling. See id. at 462. 

[Note 3] The defendant was charged with carrying a firearm without a license, in violation of G. L. c. 269, § 10 (a), and carrying a loaded firearm without a license in violation of G. L. c. 269, § 10 (n). The jury acquitted him of both charges. 

[Note 4] We note that the defendant does not argue that he did not have notice of the charge against him because the indictment included a reference to a firearm. See Grasso, 375 Mass. at 139 ("a defendant is not to be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defense"). 

[Note 5] The defendant additionally asserts that the Commonwealth failed to prove that he had felonious intent as required under G. L. c. 265, § 18A, because there was no proof that the value of the property he stole exceeded $1,200. However, his argument mistakenly relies on G. L. c. 266, § 30, rather than G. L. c. 266, § 25, the statute on which the defendant was convicted. 

[Note 6] Larceny from the person requires that the defendant steal property within the victim's control. See Commonwealth v. Glanden, 49 Mass. App. Ct. 250, 251 (2000). We are satisfied that the items inside the top drawer were within the victim's control when the defendant took them, as the victim was present in the hallway outside his apartment. See id. ("A taking from a victim's person includes a taking from the victim's presence"). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.