COMMONWEALTH *vs.* HOYT DAVIS.

Hampden.    April 15, 1980. — July 2, 1980.

Present: HALE, C.J., GREANEY, & DREBEN, JJ.

*Evidence,* Photograph.  *Mayhem. Assault and Battery. Words,* "Dangerous weapon."

At the trial of a defendant charged with mayhem, the judge did not abuse his discretion in admitting photographs showing a piece of the victim's ear which had been bitten off by the defendant and the condition of the ear after the piece had been surgically reattached.  [191-192]

Neither human teeth nor other parts of the human body are dangerous weapons within the meaning of G. L. c. 265, § 15A.  [192-198]

INDICTMENTS found and returned in the Superior Court Department on February 12, 1979.

The cases were tried before *Doerfer,* J.

*Brownlow M. Speer* for the defendant.

*John T. McDonough,* Assistant District Attorney, for the Commonwealth.

GREANEY, J.    On December 16, 1978, the defendant and the victim quarrelled at the "Diamond Mine" Lounge in Holyoke.    An encounter ensued, in the course of which the defendant bit off a piece of the victim's left ear.  The defendant was indicted for the crimes of mayhem (G. L. c. 265, § 14), and assault and battery by means of a dangerous weapon "to wit, [t]eeth" (G. L. c. 265, § 15A).  A Superior Court jury convicted him on both indictments, and he has appealed, assigning as error: (1) the introduction in evidence in connection with the mayhem charge of five photographs showing the piece of the victim's ear which was bitten off and the condition of the ear after the piece was surgically reattached; and (2) the denial of his motion for a directed verdict on so much of indictment no. 79-705 as charged the

use of a dangerous weapon, contending that human teeth cannot constitute a dangerous weapon. We hold that the judge did not abuse his discretion in admitting the photographs but that the motion for a directed verdict should have been allowed as to that portion of the assault and battery indictment that charged the use of teeth as a dangerous weapon.

1. The defendant argues that the photographs lacked evidential value on a material issue because there was other evidence at the trial which adequately described the victim's injury. He also contends that the prejudicial effect of the photographs far outweighed their probative value and served to distort the jury's consideration of his testimony (pertaining to the mayhem charge) that he acted in the heat of a fight without specific malicious intent.

The fact that photographs may be inflammatory does not render them inadmissible if they possess evidential value on a material matter. *Commonwealth* v. *Lamoureux*, 348 Mass. 390, 392-393 (1965). *Commonwealth* v. *Stewart*, 375 Mass. 380, 385 (1978), and cases cited. The determination whether a photograph possesses such value rests within the discretion of the trial judge (*id.*), and the defendant carries a heavy burden in establishing that the trial judge abused his discretion by admitting in evidence inflammatory photographs. *Commonwealth* v. *Clifford*, 374 Mass. 293, 305 (1978).

An abuse of discretion has not been shown in this case. The photographs aided the jury in better understanding the nature of the victim's injuries (*Commonwealth* v. *Retkovitz*, 222 Mass. 245, 248 [1915]; *Commonwealth* v. *Galvin*, 323 Mass. 205, 215 [1948]); in considering the medical information contained in the hospital record (*Commonwealth* v. *Lee*, 324 Mass. 714, 718-719 [1949]); and in evaluating the issue of malicious intent in connection with the mayhem charge. In view of the judge's thorough instructions in his charge on the mental element required for the crime of mayhem, there is no reasonable likelihood that the photographs could have distorted the jury's evaluation of the

defendant's position on the issue of intent; and the notion that other testimony and exhibits adequately described the victim's injuries, rendering use of the photographs unnecessary, is one that has been "invariably rejected" where relevance and authenticity are established. *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 817 (1973). *Commonwealth* v. *Clifford, supra* at 306.

2. We turn now to the question whether human teeth or parts of the body should be excluded from consideration by the fact finder as instrumentalities which can be used as dangerous weapons in indictments framed under G. L. c. 265, § 15A (inserted by St. 1927, c. 187, § 1). Section 15A punishes assaults and batteries committed by "means of a dangerous weapon" but does not expressly define the term "dangerous weapon." Instead, the meaning of the term has evolved through case law. Recently in *Commonwealth* v. *Appleby*, 380 Mass. 296 (1980), the Supreme Judicial Court stated that the concept of a dangerous weapon as used in § 15A embraces two classes of objects — "dangerous weapons per se" (those specially designed and constructed to produce death or great bodily harm, *id.* at 303); and objects which are not dangerous per se but which can be used in a dangerous fashion to inflict serious harm. *Id.* at 304. A wide variety of objects have been held to fall within the latter category. See *Commonwealth* v. *Farrell*, 322 Mass. 606, 615 (1948) (lighted cigarette); *Commonwealth* v. *Tarrant*, 2 Mass. App. Ct. 483, 486-487 (1974), *S.C.*, 367 Mass. 411 (1975) ("kitchen-type" knife and German shepherd dog); *Commonwealth* v. *LeBlanc*, 3 Mass. App. Ct. 780 (1975) (automobile door used to strike police officer); *United States* v. *Johnson*, 324 F.2d 264, 266 (4th Cir. 1963) (chair brought down upon victim's head); *United States* v. *Loman*, 551 F.2d 164, 169 (7th Cir.), cert. denied, 433 U.S. 912 (1977) (walking stick used with enough force to break it); *People* v. *White*, 212 Cal. App. 2d 464, 465 (1963) (a rock); *Commonwealth* v. *Branham*, 71 Ky. 387, 388 (1871) (a chisel used for stabbing); *Bennett* v. *State*, 237 Md. 212, 216 (1964) (microphone cord tied around victim's neck);

*People* v. *Buford,* 69 Mich. App. 27, 30 (1976) (dictum) (automobile, broomstick, flashlight and lighter fluid all may be dangerous as used); *State* v. *Howard,* 125 N.J. Super. 39, 45 (1973) (straight razor); *State* v. *Martinez,* 57 N.M. 174, 176 (1953) (a knife with a blade two inches long); *Regan* v. *State,* 46 Wis. 256, 258 (1879) (large stones). We recognize that our cases have held that questions as to whether instrumentalities which are not dangerous per se have been used in a dangerous fashion are generally reserved to the fact finder to be decided on the basis of the circumstances surrounding the crime, the nature, size and shape of the object, and the manner in which it is handled or controlled. See *Commonwealth* v. *Farrell,* 322 Mass. at 614-615; *Commonwealth* v. *Tarrant,* 367 Mass. 411, 416 (1975) (armed robbery); *Commonwealth* v. *Appleby,* 380 Mass. at 304-305. However, for the reasons now discussed we think that human teeth and other parts of the human body should be removed from consideration as dangerous weapons in § 15A indictments, even on a case-by-case basis.

First, all the Massachusetts cases which have considered the use of neutral objects as potential weapons in the commission of assault crimes have considered instrumentalities apart from the defendant's person. The *Farrell, Tarrant* and *Appleby* decisions considered a lighted cigarette, an attack dog, and a riding crop, respectively. Even when the act of "kicking" underlies the charge of assault with a "dangerous weapon," the shoe or boot, not the foot, is the object which is considered as the "weapon" subjecting the assailant to a charge of aggravated assault. See *Ransom* v. *State,* 460 P.2d 170, 171-172 (Alaska 1969). See also *Commonwealth* v. *Durham,* 358 Mass. 808, 809 (1970) (shoe used to stomp on victim's hand); Nolan, Criminal Law § 325 (1976) ("[a] person's shoe . . . when used to kick a person . . . becomes a dangerous weapon"); Annot., 33 A.L.R.3d 922, 927-929 (1970). Since the adoption of § 15A, there has been no decision reported in this State which holds that human hands, feet or teeth alone can constitute a dangerous weapon. This suggests that for over fifty years prosecutors have not con-

sidered assault cases involving the use of hands, feet, fingers or teeth as incidents where "dangerous weapons" were employed. It also suggests that prosecutors have been reluctant to read our judicial precedent on the subject as inviting indictments pressing factual contentions that parts of the body can be used as weapons. Rather, where serious or disabling injuries are inflicted, and the requisite intent is present, district attorneys typically bring indictments under § 14 (mayhem) or § 15 (assault with intent to maim or disfigure) of c. 265; otherwise § 13A (assault and battery) is used as the prosecutorial tool to vindicate society's interest. Thus in the context of the practical application of the statute the concept of neutral objects used as dangerous weapons has been confined to independent nonhuman instrumentalities. These considerations, in light of the fact that fifty-three years have elapsed since the Legislature enacted § 15A, call, in our view, for the exercise of judicial restraint in expanding the concept beyond its traditional scope.

Second, the notion that parts of the body may be used as dangerous weapons has not been generally accepted elsewhere. The clear weight of authority is to the effect that bodily parts alone cannot constitute a dangerous weapon for the purpose of an aggravated assault based on the alleged use of such a weapon. This is so, irrespective of the degree of harm inflicted. See *Ransom* v. *State*, 460 P.2d at 172; *Dickson* v. *State*, 230 Ark. 491, 492 (1959); *Reed* v. *Commonwealth*, 248 S.W.2d 911, 914 (Ky. 1952); *State* v. *Calvin*, 209 La. 257, 265-266 (1945); *People* v. *VanDiver*, 80 Mich. App. 352, 356-357 (1977); *People* v. *Vollmer*, 299 N.Y. 347, 350 (1949); *Bean* v. *State*, 77 Okla. Crim. 73, 81-84 (1943); *State* v. *Wier*, 22 Or. App. 549 (1975); *State* v. *Hariott*, 210 S.C. 290, 299-300 (1947).

*State* v. *Calvin*, *supra*, the sole reported decision dealing with the question whether teeth may constitute a dangerous weapon, is particularly instructive. In that case there was evidence that the defendant had bitten the victim, and the trial judge had charged the jury that since "a person's bare fist could be classed and used as a dangerous weapon, . . . a

person's teeth could be classed as a dangerous weapon." 209 La. at 265 (emphasis omitted). The Supreme Court of Louisiana, applying a definition of "dangerous weapon" ("any . . . instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm") virtually identical to that set forth in *Commonwealth* v. *Farrell, supra,* held that charge to be error:

> "We know of no authority of law . . . which classes
> one's bare hands or teeth as a dangerous weapon . . . .
> It is true that portions of the human anatomy may be
> dangerous and the bare hands of a merciless assailant
> may quite readily 'produce death or great bodily harm,'
> . . . but the fact remains that there must be proof of
> the use of some inanimate[1] instrumentality before a
> defendant can be held guilty of assault 'with a danger-
> ous weapon.'" *Id.* at 265-266.

The Commonwealth's attempt to rationalize this array of precedent on the basis that each result depends on the peculiar nuances of the assault statutes in each State is not persuasive. Whatever the statutory oddities involved, the decisions all share common ground in their firm rejection on express or implied policy grounds of the idea that parts of the body may be "weapons."

Third, in the absence of reconsideration by the Legislature of the term "dangerous weapon" or of the gist of the crime defined in § 15A, we see no compelling reason to stretch the term "weapon" to allow prosecution under § 15A of actions that are ordinarily prosecuted in other ways. Almost every attack which involves the use of a part of the body to inflict serious injury has been and remains punishable under one or the other of the felonious assault statutes apart from

---

[1] At this point we recognize that in Massachusetts an animate object such as an attack dog can be used as a "dangerous weapon." *Commonwealth* v. *Tarrant, supra.*

§ 15A. Thus, an attack such as an attempt to strangle falls under G. L. c. 265, § 15 (assault with intent to murder), or under § 29 of the same chapter (assault with intent to commit a felony, i.e., to kill). Attacks without weapons which result in injuries to particular parts of the body or which cause disabling or disfiguring injuries are prosecuted under the first portion of G. L. c. 265, § 14, as mayhem, or under § 15, as assault with intent to maim. If weapons, chemicals, or substances are used to maim or disfigure, the indictment is brought under the second portion of § 14 which "allows a conviction of mayhem for a more general range of injury." *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 246 n.11, *S.C.*, 379 Mass. 190 (1979). The mental state required for conviction of mayhem or assault with intent to maim is satisfied by direct or inferential proof that the assault was intentional, unjustified, and made with the reasonable appreciation on the assailant's part that a disabling or disfiguring injury would result. See *Commonwealth* v. *Farrell*, 322 Mass. 606, 619 (1948). *Commonwealth* v. *Lamothe*, 343 Mass. 417, 419-420 (1961). Bending § 15A to include an assault of the type that occurred in the present case would result in needless duplicity and would frustrate what we perceive to be the legislative intent in separating felonious assaults. On similar analysis, the Court of Appeals of Michigan has held, in a well-reasoned opinion based on the intent of the Legislature in that State, that "the term 'dangerous weapon' cannot be contrued to include the bare hands." *People* v. *VanDiver*, 80 Mich. App. at 357.

Finally, we seek to avoid turbulence elsewhere in the statutory scheme. Assault crimes cover types of criminality ranging from simple assault and battery to a variety of aggravated assaults which are punishable as felonies. Commonly, the aggravating factor that runs the assault up to the more serious level is the specific intent to commit another felony (see, e.g., G. L. c. 265, § 24, assault with intent to rape), or the presence (apart from the use) of a weapon coupled with the specific intent to commit another crime (see, e.g., G. L. c. 265, § 18, assault "while armed" with in-

tent to rob or murder). In the case of an assault and battery by means of a dangerous weapon — a felony with a ten-year maximum — aggravation derives both from the use of an instrument capable of producing serious bodily harm (*Commonwealth* v. *Appleby*, 380 Mass. at 306), and from the fact that the use of such an object supports the presumption of an intent on the actor's part to inflict serious injury. 2 Wharton, Criminal Law § 201 (14th ed. 1979). See generally, Oberer, The Deadly Weapon Doctrine — Common Law Origin, 75 Harv. L. Rev. 1565, 1573-1576 (1962). Use of a weapon is discouraged by making an assault committed with one a more serious crime than simple assault and by attaching the full measure of criminal liability for even the *slightest* touching with the weapon. *Commonwealth* v. *Appleby*, 380 Mass. at 308. Several other offenses find aggravation of the underlying felony in the actor's "being armed with a dangerous weapon." Examples are G. L. c. 265, § 17, punishing robbery while "armed with a dangerous weapon," and G. L. c. 265, § 18A, concerning assaults in a dwelling by a person "armed with a dangerous weapon." In these felonies, enhanced criminality springs from possession of the weapon (not contact by it), or its use to menace the victim and put him in fear. *Commonwealth* v. *Tarrant*, 367 Mass. at 417. See *Commonwealth* v. *D'Ambra*, 357 Mass. 260, 261-262 (1970). Moreover, a major reason for treating these crimes as aggravated offenses solely because of the defendant's possession of a dangerous weapon is "the tendency toward resistance, conflict, and violence in result which exists where [the crime] is perpetrated with the use of a dangerous weapon." *Commonwealth* v. *Tarrant, supra* at 415. Thus, the ordinary fistfight in which the victim offers resistance or participates in an escalation of the event would become a candidate for a felony indictment in many cases now prosecuted as instances of simple assault and battery. The treatment of parts of the body as potential weapons also opens the door to other idiosyncratic prosecutions under statutes which base aggravation on whether the actor is "armed." We have great respect

for the ability of a sensible jury to reject out of hand, on the particular facts, the more fanciful prosecutions which would be possible if unadorned hands, fingers, feet or teeth were to qualify as dangerous weapons.[2] However, we cannot overlook the facts that under the current state of our law the fact finder would have to consider and determine the appropriateness of each and every such indictment;[3] that prosecutors would thus be encouraged to bring felony indictments for many situations now handled as misdemeanors, if only for the strategic advantage such indictments would give the Commonwealth;[4] and that there would undoubtedly be many felony convictions for crimes which are now punishable only as misdemeanors. "The determination of what the penalty, or the range of the penalty, should be for any given crime is primarily a matter of public policy for determination by the Legislature . . . ." *Commonwealth* v. *Gould*, 380 Mass. 672, 692 (1980) (Quirico, J. dissenting).

We think, essentially for the reasons of public policy stated, that a broadening of the definition of a dangerous weapon in the context discussed should occur, if it occurs, through deliberative legislative action.[5]

---

[2] We would not expect juries to return a great many guilty verdicts for armed robbery where the defendant bared his teeth at the victim.

[3] It would be the rare case where a judge could determine as a matter of law that in the circumstances no dangerous weapon was used, whether the claimed assault or other crime was carried out by means of hands, feet, teeth or even long fingernails.

[4] For example, a defendant might more easily plead to the lesser included offense of simple assault or battery, because of the prospect of not-so-certain acquittal as to the felony, particularly in cases like that of the barroom brawl where the victim is in fact injured.

[5] In this regard, the Proposed Criminal Code of Massachusetts c. 265, §§ 6, 7, and 8 (Mass. Crim. Law Rev. Commn. 1972), divides assaults into three degrees denominated as Class B (first degree), C (second degree) and D (third degree) felonies. Each of these treats assaults which cause serious bodily injury separately from assaults which cause physical harm and involve the use of a dangerous weapon.

The Proposed Criminal Code c. 263, § 3(i), adopts the Model Penal Code definition of a dangerous weapon as follows: "any firearm or other

3. The judgment on indictment no. 79-704 (mayhem) is affirmed. The judgment on indictment no. 79-705 is reversed, and so much of the verdict is set aside as found the defendant guilty of the use of a dangerous weapon. The case is remanded to the Superior Court for the defendant's resentencing on indictment no. 79-705 as if for assault and battery. See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 661-663 (1979).

*So ordered.*

---

weapon, device, instrument, material or substance, whether *animate or inanimate*, which in the manner in which it is used or is intended to be used is capable of producing death or serious bodily injury" (emphasis supplied). The reference to "animate" devices seems to be designed to cover the use of animals such as was the case in *Commonwealth* v. *Tarrant, supra.* If it were otherwise and part of the body were included therein, the distinctions among the crimes in §§ 6, 7, and 8 would become meaningless.