COMMONWEALTH *vs*. JOSE L. MARRERO. December 11, 1984. *Assault and Battery. Practice, Criminal*, Instructions to jury. *Words*, "Dangerous weapon."

Upon conviction by a jury in the Superior Court of charges of attempted escape (G. L. c. 268, § 16) and assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A), the defendant was sentenced to concurrent terms of imprisonment. On appeal, he attacks only his conviction on the assault and battery charge, claiming that the judge erred in denying his motion for a required finding of not guilty and in inadequately instructing the jury. Both contentions involve proof of the dangerous weapon element of the offense.

There was evidence in the Commonwealth's case as follows. On November 2, 1981, the defendant was being held at the Lawrence jail on charges of statutory rape, receiving stolen property, and breaking and entering in the nighttime. That evening he, another inmate named LaCourse and a third unidentified inmate, attempted to escape from the jail by sawing through the bars in a window with hacksaw blades that had been smuggled into the jail. The attempt was unsuccessful and was subsequently discovered by jail officials. The next day, after the evening lockup, the defendant, LaCourse and one Torres went to the victim's cell. The victim had observed the attempted break-out the night before, and LaCourse called him a "rat" for supposedly informing jail officials about the escape. LaCourse placed a paper bag over the victim's head, poking holes for the victim's eyes and mouth, and he, the defendant, and Torres then forced the victim to perform fellatio on them as other inmates watched from outside the cell. LaCourse removed the bag, again called the victim a "rat" and beat him for approximately fifteen minutes.

Coming to the defendant's role in the assault, the victim testified that, after LaCourse stopped beating him, the defendant, who was skilled in karate, began to kick him, jumping up and down on him with "karate kicks." On his direct and redirect examinations the victim testified that the defendant had been wearing boots during the assault. On cross-examination, however, he testified that the defendant had worn sneakers. A police detective

testified that the defendant had admitted kicking the victim. The detective further testified that, after the incident, the victim's "face was covered with red welts, bruises. His eyes were black. [He had] red welts about his chest and back. And footprints were visible on his chest area and his back area." The victim was admitted to the hospital with serious and extensive injuries. The victim's father saw his son two days after the beating and observed that the victim "had a bandage over his right eye . . . [that] his eyes were swollen . . . [and that he had] black and blue all the way down to his cheeks [and] eyes [which] were bloodshot." The father also observed "black and blue marks all the way up" his son's back "in the kidney area." In addition, a series of seven enlarged color photographs of the victim's injuries were admitted in evidence. These photographs depicted the results of a savage beating and showed injuries consistent with the victim's having been kicked or stomped.

1. The defendant argues that his motion for a required finding of not guilty should have been allowed on the dangerous weapon element of the assault and battery charge. To support the argument, he relies upon language in Massachusetts decisions, and cases elsewhere, which indicates that, in determining whether an object is dangerous, a jury "may consider the nature, size, and shape of the object." *Commonwealth* v. *Appleby*, 380 Mass. 296, 307 n.5 (1980), citing *Commonwealth* v. *Tarrant*, 367 Mass. 411, 416 (1975). See also *Commonwealth* v. *Davis*, 10 Mass. App. Ct. 190, 193 (1980). The defendant urges that the jury did not have enough evidence before them, by way of a description of his footwear, to warrant a conclusion that the footwear had been used as a dangerous weapon.

Footwear, such as a shoe, when used to kick, can be a dangerous weapon. See *Commonwealth* v. *Durham*, 358 Mass. 808, 809 (1970); Nolan, Criminal Law § 325 (1976); Annot., 33 A.L.R. 3d 922, 927-929 (1970). The essential question, when an object which is not dangerous per se is alleged to be a dangerous weapon, is whether the object, as used by the defendant, is capable of producing serious bodily harm. See *Commonwealth* v. *Appleby*, 380 Mass. at 304. "Of course where the neutral object is in fact used to inflict serious injury it would clearly be a dangerous weapon." *Commonwealth* v. *Tarrant, supra* at 416 n.4. Resolution of these questions is invariably for the fact finder, see *Commonwealth* v. *Appleby, supra,* and involves not only consideration of any evidence as to the nature and specific features of the object but also attention to the circumstances surrounding the assault and the use of the object, and the manner in which it was handled or controlled. *Commonwealth* v. *Farrell*, 322 Mass. 606, 614-615 (1948). *Commonwealth* v. *Appleby, supra* at 304-305. *Commonwealth* v. *Davis, supra* at 193.

The evidence most favorable to the Commonwealth in this case, see *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 239 (1982), indicates that the defendant wore boots during the assault. (The victim's testimony concerning sneakers never reached the point of repudiation of his testimony

about boots and, as a consequence, the sneakers testimony is to be disregarded on the required finding question.) Under the standard governing the use of neutral objects as dangerous weapons, there was sufficient evidence in the victim's testimony detailing the kicking and stomping administered by the defendant, and in the nature of his injuries, including the evidence that his chest bore the mark of "footprints," for the jury to find, with the required degree of certitude, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 678-679 (1979), that the defendant had worn boots and that the boots had been used as a dangerous weapon.[1] The motion for a required finding on the dangerous weapon issue was properly denied. (To the extent that it is argued that there should have been a required finding of not guilty on the theory that sneakers had been the weapon, the motion was also properly denied for the reasons discussed above.)

2. We are not persuaded by the defendant's other contention that omissions in the judge's final jury instructions on the dangerous weapon element of the offense gave rise to a substantial risk of a miscarriage of justice. The defendant presented no requests for jury instructions, and his trial counsel did not object to the charge. The judge's instructions on the dangerous weapon element of the offense were detailed and correct. The judge, drawing upon *Commonwealth* v. *Appleby, supra*, carefully instructed on the distinction between objects which are dangerous per se and those which may become dangerous when used to cause serious bodily injury. The judge further listed the pertinent factors to be considered in deciding whether an object not dangerous per se has become so and he offered several helpful examples to guide the jury's analysis.

On the evidence, the jury were not confronted with a choice between two types of footwear, one of which could be found to be a dangerous weapon, but the other of which could not because it was incapable of inflicting any greater injury than an unshod foot. See *Commonwealth* v. *Davis*, 10 Mass. App. Ct. 190, 192-198 (1980). If this had been the proof, there would likely have been error unless the jury had been instructed on the significance of the choice between the two. Here, however, the evidence

---

[1] The Commonwealth's position as to its proof did not deteriorate between the time that the Commonwealth rested and the close of all the evidence. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976). If anything it improved with testimony by a nurse called by the defendant who noted that, when she examined the victim in the hospital, he "had some bruises over his left arm and shoulder and one of the bruises on his arm resembled the heel of a boot."

We note further that the cases from other jurisdictions cited by the defendant involved injuries which were not extensive. The courts which decided them observed either in the same or a subsequent case (generally in accord with Massachusetts law) that the object alleged as dangerous need not be described to the fact finder in detail if the fact finder can conclude that the object was the cause of serious injuries. See *Ransom* v. *State*, 460 P.2d 170, 171-172 (Alaska 1969); *Williams* v. *State*, 127 Ga. App. 386 (1972), in light of *Kirby* v. *State*, 145 Ga. App. 813, 815 (1978).

was such that the jury's picking between boots or sneakers became immaterial since the nature and extent of the victim's injuries warranted a conclusion that the defendant's footwear, whether boots or sneakers, had been used as a dangerous weapon. Finding no error, we conclude that the judgment of conviction on indictment no. 4006 must be, and the same hereby is, affirmed.

*So ordered.*

*Bruce Ferg* for the defendant.

*Edward F. Connelly* (*Dyanne Klein Polatin*, Assistant District Attorney, with him) for the Commonwealth.