UNITED STATES of America,
Plaintiff–Appellee,

v.

Jeffrey Wayne STURGIS,
Defendant–Appellant.

No. 94–5142.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 9, 1994.

Decided Feb. 21, 1995.

**ARGUED:** Suzanne Little, Alexandria, VA, for appellant. Timothy Joseph Shea, Asst. U.S. Atty., Alexandria, VA, for appellee. **ON BRIEF:** Glen Trimper, Alexandria, VA, for appellant. Helen F. Fahey, U.S. Atty., Alexandria, VA, for appellee.

Before HALL, WILKINSON, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge WILKINSON wrote the majority opinion, in which Judge WILLIAMS joined. Judge HALL wrote a dissenting opinion.

## OPINION

WILKINSON, Circuit Judge:

Jeffrey Wayne Sturgis appeals his conviction for assault with a dangerous weapon, 18 U.S.C. § 113(c), and assault on a correctional officer with a dangerous weapon, D.C.Code § 22–505(b). Sturgis, who is HIV positive, bit two correctional officers who were attempting to restrain him during an altercation at the Lorton Reformatory. We conclude that the evidence was sufficient to establish Sturgis' intent to harm the correctional officers. The question of whether Sturgis' teeth qualified as a dangerous weapon was also one of fact for the jury. Here the jury could reasonably have concluded that Sturgis used his mouth and teeth as a "dangerous weapon" during the incident. Accordingly, we affirm Sturgis' conviction.

I.

On July 15, 1993, Jeffrey Wayne Sturgis traveled to the Lorton Reformatory in Lorton, Virginia, to visit an inmate. Sturgis entered the "visiting trailer," where he was required to present identification and submit to a search of his person and belongings. Signs posted outside the trailer warned that it was a crime to introduce contraband, including narcotics, into the prison. In addition, Sturgis was advised that he would be subject to a search before being permitted to visit an inmate of the facility.

After Sturgis entered the "shakedown" room, Corporal Price and Officer John Doe conducted a pat-down search of his person. During the pat-down, Corporal Price discovered what he believed to be a foreign object near Sturgis' groin. When questioned about the object, Sturgis declared that he wished to end the search and forego the visit. Sturgis then reached into his pants and transferred some object into his mouth in a cupped hand. Officer Doe, suspecting that Sturgis was attempting to conceal contraband, held Sturgis' jaw to force the object out of his mouth. Sturgis began to struggle; only moments later, he spit out a pink substance that was later determined to be bubble gum. As Officer Doe reached forward to retrieve the substance, Sturgis lunged at Officer Doe and bit him on the left thumb, holding the bite for several seconds and inflicting a serious wound that bled heavily.

As the struggle escalated, other correctional officers entered the shakedown area to help restrain Sturgis, who was kicking and flailing about. One of them, Officer Jane Doe, attempted to grab Sturgis from behind. At one point, the officers and Sturgis lost their footing and tumbled to the ground. When Sturgis' head landed on Officer Jane Doe's forearm, he seized the opportunity to bite her. Officer Doe attempted repeatedly to break the bite and free her arm, yet Sturgis again held the bite for several seconds; the resulting wound bled profusely. Both officers sought immediate medical attention and have been treated by their private physicians since the incident. At the time of trial, both officers had been tested for

HIV on at least two occasions; each test was negative.

After several correctional officers succeeded in restraining Sturgis, they observed him slipping in and out of consciousness. Fearing that he had swallowed narcotics, the officers transported Sturgis to DeWitt Army Hospital for treatment and observation. While at the hospital, Sturgis continued to be combative, shouting and struggling with hospital and law enforcement personnel. Testimony from those present indicates that Sturgis attempted to bite and spit at the medical personnel treating him. Sturgis also threatened to "come back and . . . kill" them. When a corpsman asked Sturgis to stop biting and spitting because he was HIV positive, Sturgis responded that he knew of his condition and was trying to infect the medical staff. Officer Jane Doe heard Sturgis threaten the corpsman, "I'll bite you like I did her. I hope you get it."

Sturgis' stomach was pumped at the hospital. Although no foreign objects were found, a drug screen revealed traces of cocaine and marijuana in his bloodstream. A blood test performed at DeWitt Army Hospital also confirmed Sturgis' HIV positive status. Meanwhile, Sturgis' car, still parked at the Lorton Reformatory, was searched. Two bags were discovered in the trunk; a search of the bags revealed balloons filled with heroin, cocaine base, and marijuana.

At Sturgis' trial, the government presented medical records compiled while Sturgis was an inmate at Lorton. Those records contained eight references to Sturgis' HIV positive status and indicated that he had been informed of that status in 1991. The United States also offered expert testimony to establish that HIV, which is found in human saliva, can be transmitted through a bite. Dr. Alan Joseph Morrison, Jr., a board-certified physician in infectious diseases, testified that "[t]here are a number of reported cases in the literature, in accepted medical literature where transmission of HIV has been by an instance of biting or by saliva contact."

Sturgis testified in his own behalf. He insisted that he was unaware of his HIV positive status until counsel informed him of the results of the test taken at DeWitt Army Hospital in July of 1993. Sturgis also maintained that he had no intent to assault the officers, but merely acted in self-defense. According to Sturgis, he bit Officer John Doe only as the officer reached into his mouth and bit Officer Jane Doe on the forearm because she was choking him from behind.

After a one-day trial, the jury convicted Sturgis of two counts of assault with a dangerous weapon, 18 U.S.C. § 113(c), two counts of assault on a correctional officer with a dangerous weapon, D.C.Code § 22–505(b), and three counts of felony possession of narcotics, 21 U.S.C. § 844(a). The charge to the jury on the dangerous weapon element of the assaultive crimes reads as follows:

> [T]he term deadly or dangerous weapon includes any object capable of being readily used by one person to inflict serious bodily injury upon another person. And if you believe that the defendant's mouth and teeth meet this definition, then his mouth and teeth can be considered by you as a dangerous weapon.

At sentencing, the district court enhanced Sturgis' base offense level by two levels for obstruction of justice under U.S.S.G. § 3C1.1 because Sturgis had offered perjured testimony about his knowledge of his HIV status. The court sentenced Sturgis to 168 months' imprisonment. Sturgis appeals both his conviction and the enhancement of his sentence.

## II.

■■■ Conviction for assault with a dangerous weapon under 18 U.S.C. § 113(c) requires proof of (1) an assault, (2) with a dangerous weapon, (3) with intent to do bodily harm. *United States v. Schoenborn*, 4 F.3d 1424, 1430 (7th Cir.1993). Likewise, conviction for assault with a dangerous weapon upon a correctional officer under D.C.Code § 22–505(b) requires proof of the above elements plus (1) knowledge that the victim was a correctional officer of a correctional institution of the District of Columbia (2) who was engaged in the performance of official duties at the time of the assault. *Nelson v. United States*, 580 A.2d 114, 116–17 (D.C.App.1990). Sturgis insists that the

evidence presented at trial was insufficient to establish the elements of each offense.

### A.

■ Sturgis claims that the evidence fails to establish that he acted with the requisite intent to do bodily harm to the correctional officers. Rather, he maintains that he acted wholly in self-defense.

■ When determining whether sufficient evidence exists to sustain a conviction, this court views the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Here the evidence amply establishes Sturgis' intent to inflict harm. The record demonstrates that Sturgis acted in a violent and aggressive manner throughout the confrontation with the correctional officers and continued to kick, scream, and thrash about even after being taken to DeWitt Army Hospital. Indeed, Officer John Doe testified that it took no less than six correctional officers to restrain Sturgis in the shakedown area at Lorton. Moreover, Sturgis' own statements, specifically his threats against the medical personnel who treated him, indicate that he was aware he was infected with HIV and wanted to infect others. Finally, evidence that Sturgis held each of the bites on the correctional officers for several seconds indicates intent to inflict serious bodily harm, not merely to defend himself from attack.

### B.

■ We next address whether Sturgis' use of his teeth to bite the correctional officers amounted to use of a "dangerous weapon."

Title 18 itself does not provide a general definition of "dangerous weapon."[1] The United States Sentencing Guidelines, howev-er, define a dangerous weapon as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, commentary 1(d). The Supreme Court has eschewed a mechanical test of dangerousness in favor of a multi-factored inquiry which emphasizes the capacity of the instrument to instill fear or to inflict harm. *McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986) (holding that unloaded handgun used during bank robbery was dangerous weapon for purposes of 18 U.S.C. § 2113(d), since display of gun would incite fear in the average citizen and thereby create risk of a violent response). For purposes of our case, what constitutes a dangerous weapon depends not on the object's intrinsic character but on its capacity, given "the manner of its use," to endanger life or inflict serious physical harm. *United States v. Johnson*, 324 F.2d 264, 266 (4th Cir.1963). In *United States v. Moore*, 846 F.2d 1163 (8th Cir.1988), the Eighth Circuit reached a similar conclusion: "Almost any weapon, as used or attempted to be used, may endanger life or inflict great bodily harm; as such, in appropriate circumstances, it may be a dangerous and deadly weapon." *Id.* at 1166.

■ Thus an object need not be inherently dangerous to be a dangerous weapon. *See id.* Rather, innocuous objects or instruments may become capable of inflicting serious injury when put to assaultive use. *See, e.g., United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir.1994) (belt and shoe can be dangerous weapons when used to beat a two-year-old child); *Johnson*, 324 F.2d at 266 (metal and plastic chair can be dangerous weapon when held overhead and brought down on a victim's head); *Arthur v. United States*, 602 A.2d 174, 177–78 (D.C.App.1992) (tennis shoes can be dangerous weapon when used to stomp on victim's head); *Cummings*

---

1. Section 22–505 does not define dangerous weapon either. Other sections of the D.C.Code do, however, list dangerous weapons—among them knives, guns, blackjacks, false knuckles, and the like. *See, e.g.,* D.C.Code §§ 22–3202, 22–3214. As the cases interpreting these provisions make clear, however, the lists are illustrative; not exhaustive. *See, e.g., Thomas v. United States*, 602 A.2d 647, 651 (D.C.App.1992) (section 22–3202 "is not confined to a prescribed list of inherently dangerous weapons or instruments commonly used as dangerous weapons. Rather, it also encompasses any instrument used as a dangerous weapon."); *Edwards v. United States*, 583 A.2d 661, 664–65 (D.C.App.1990) (court employs "a functional rather than a maxim-shackled analysis in determining whether a particular object is a 'dangerous weapon'" under § 22–3202; "a dangerous weapon need not be a hand-held item, like a pistol, dagger or hatchet, which could readily be used in combat").

*v. State,* 270 Ind. 251, 384 N.E.2d 605, 606 (1979) (stapler ·can be dangerous weapon when used as a bludgeon); *State v. Hatwan,* 208 Neb. 450, 303 N.W.2d 779, 782 (1981) (telephone receiver can be dangerous instrument when defendant "swung [it] by the attached cord," striking victim on the head and splitting his ear open); *Bald Eagle v. State,* 355 P.2d 1015, 1017 (Okla.Crim.App. 1960) (beer bottle can be dangerous weapon when used to hit victim on the head).

In terms of the statutory language, teeth may also be a dangerous weapon if they are employed as such. To make this case turn on whether parts of the human body can ever be dangerous weapons would be an exercise in empty formalism. The statutes in fact draw no such artificial line. Parts of the human body have been held dangerous weapons under circumstances in which the body part was employed to inflict death or serious physical injury. For instance, in *Moore,* the Eighth Circuit found that the mouth and teeth of an HIV positive inmate were dangerous weapons when used to bite two federal correctional officers, despite the lack of conclusive proof that HIV or AIDS could be transmitted by a bite. 846 F.2d at 1167–68. The *Moore* court noted that the potential for serious infection resulting from a human bite is a form of "serious bodily harm" sufficient, without more, to render teeth dangerous weapons. *Id.* at 1167. *See also United States v. Parman,* 461 F.2d 1203, 1204 n. 1 (D.C.Cir.1971) ("biting with teeth" charged as assault with deadly weapon); *State v. Born,* 280 Minn. 306, 159 N.W.2d 283, 284–85 (1968) (fists and feet may be dangerous weapons when used to strike and stomp).

■ The above cases emphasize that determination of whether a given instrumentality was used as a "dangerous weapon" must be left to the jury. *See, e.g., Riggins,* 40 F.3d at 1057; *Moore,* 846 F.2d at 1166; *United States v. Czeck,* 671 F.2d 1195, 1197 (8th Cir.1982). *See also United States v. Hamilton,* 626 F.2d 348, 349 (4th Cir.), *cert. denied,* 449 U.S. 902, 101 S.Ct. 273, 66 L.Ed.2d 133 (1980) (whether an object constitutes a weapon for purposes of 18 U.S.C. § 1792 must be determined by the trier of fact); *United States v. Barnes,* 569 F.2d 862, 863 (5th Cir.1978) (same). The test of whether a particular object was used as a dangerous weapon is not so mechanical that it can be readily reduced to a question of law. Rather, it must be left to the jury to determine whether, under the circumstances of each case, the defendant used some instrumentality, object, or (in some instances) a part of his body to cause death or serious injury. This test clearly invites a functional inquiry into the use of the instrument rather than a metaphysical reflection on its nature.

The dissent suggests that our interpretation of the dangerous weapon statutes will render the basic assault statutes superfluous. This contention is unfounded. The burden that the prosecution faces before a jury under the dangerous weapon statutes obviously differs in degree from that under a charge of simple assault. A jury, for example, might well reject the notion that kicking a correctional officer in the shin or slapping him in the face constituted a violation of the dangerous weapons offense in 18 U.S.C. § 113(c). That same jury, however, might well conclude that the use of one's fingernails to claw out the same officer's eyes did constitute just such a violation. In this case, the jury was instructed both as to lesser included assault offenses and to the charge of assault with a dangerous weapon. It found that the prosecution had carried its burden in establishing the elements of the latter offense. *See United States v. Agofsky,* 411 F.2d 1013 (4th Cir.1969) (noting that assault by striking, beating, or wounding under § 113(d) and simple assault under § 113(e) are lesser included offenses of assault with a dangerous weapon under § 113(c)).

Here a jury could reasonably have concluded that Sturgis' use of his teeth to inflict potentially lethal bite wounds amounted to use of a dangerous weapon. Sturgis aggressively bit two correctional officers as they attempted to restrain him; testimony indicated that he held the bites for at least four or five seconds. The bites inflicted serious wounds which bled profusely, necessitating medical attention. We cannot say that the

jury was remiss in finding appellant's teeth were a "dangerous weapon" in circumstances such as those presented in this case.

Finally, there is at least a substantial possibility that HIV, which causes AIDS, can be transmitted via a human bite. As noted above, Dr. Morrison offered expert testimony that "HIV can be transmitted by contact with saliva and/or a biting event." In light of this evidence, Sturgis' attack may not only have inflicted serious injury on the officers but endangered their lives as well.

In sum, the jury could have found that the wounds inflicted by Sturgis' teeth were in essence indistinguishable from punctures caused by a knife or an ice pick. The assertion that human teeth can never qualify as a dangerous weapon ignores the harm to those on whom these bites were inflicted.[2]

## III.

For the foregoing reasons, Sturgis' conviction and sentence are

*AFFIRMED.*

HALL, Circuit Judge, dissenting:

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979), *quoted in United States v. Wilson,* 796 F.2d 55, 58 (4th Cir.1986). Because teeth, however much they can be or are employed to visit violence upon others, are not "dangerous

weapons" as that term is commonly understood, I would reverse the assault convictions of defendant and remand for further proceedings.

The result reached by the majority and the court in *Moore, ante* at 787, is by no means an absurd or even an unreasonable one. Practically any *object* could qualify as a weapon under the types of statutes before us, *see, e.g., State v. Frey,* 178 Wis.2d 729, 505 N.W.2d 786 (Ct.App.1993) (pillow can be a weapon when used to cover victim's face so she could not breathe). Moreover, it would offend neither equity nor the English language for the legislature to *specifically* include teeth (or fists or feet, for that matter) as weapons whose use constitutes an aggravation of the crime of assault. "Weapon," however, connotes an object or instrument, and it strains the boundaries of ordinary usage to call body parts "objects." Punch, kick or bite another, and you are guilty of assault; strike or stab another with an object, and you are guilty of assault with a weapon. This common sense understanding is buttressed by the structure of the statutes of conviction.

The federal statute of conviction, 18 U.S.C. § 113(c), which proscribes "[a]ssault with a dangerous weapon, with intent to do bodily harm," carries a maximum sentence of imprisonment of five years. The next subsection, 113(d), proscribes "[a]ssault by striking, beating, or wounding ..." and carries a six-month maximum sentence.[1] Despite the tenfold difference in allowable sentences under the two sections, a striking with a fist could be as easily classified as one or the other under the majority's reasoning. This would

---

**2.** Sturgis also argues that the district court improperly imposed a two-level enhancement of his base offense level for obstruction of justice based on the finding in the presentence report that Sturgis offered perjured testimony at trial when he denied awareness of his HIV positive status prior to 1993. Sturgis complains that the district court did not make independent findings of fact regarding his knowledge of his HIV status.

This contention lacks merit. A district court satisfies the requirement that a sentencing court make factual findings by adopting the facts contained in the presentence report. *United States*

*v. Troka,* 987 F.2d 472, 475 (7th Cir.1993). The district court's judgment in this case specifically adopted "the factual findings and guideline application in the presentence report." Nothing more was necessary.

**1.** Similarly, D.C.Code § 22–505(a) provides a five-year maximum sentence for anyone who "assaults ... [any correctional officer]," while subsection (b), the other statute of conviction, increases the maximum sentence to ten years for an assault in which the defendant "uses a deadly or dangerous weapon."

render any distinction between the two sections almost imperceptible. *See People v. Van Diver,* 80 Mich.App. 352, 263 N.W.2d 370 (1977) (holding that bare hand was not a weapon under assault statute because to hold otherwise would result in practically every assault qualifying as an aggravated assault); *see also Frey,* 505 N.W.2d at 791 ("To allow juries to consider a defendant's body parts as dangerous weapons would result in penalty enhancement ... for virtually every battery offense, thus blurring the legislatively-drawn line between simple and aggravated battery[, and] would be directly contrary to the legislative intent evinced by this statutory scheme"). While it would perhaps have been preferable to distinguish assaults on the basis of the seriousness of the injuries inflicted, Congress has chosen instead to use "weapon" as the distinguishing concept, and we are obliged to give this term some meaning. Once body parts are deemed weapons, the term ceases to be of any use as a distinguishing factor.

Sturgis was also convicted under D.C.Code § 22–505(b), which proscribes assaults upon correctional officers with the use of a "dangerous or deadly weapon." Although the terms "weapon" or "dangerous weapon" are not defined in the code, reference to related legislation is instructive. *See Edwards v. United States,* 583 A.2d 661, 664 (D.C. Ct. App.1990) ("When the meaning of a word in a statute is doubtful, it is appropriate to refer to related legislation to determine the sense in which the word was employed in the particular statute") (citation omitted). Section 22–3202 establishes a hierarchy of sentence ranges (based on the defendant's criminal record) for crimes of violence committed "when armed with ... any pistol or other firearm ... or other dangerous or deadly

weapon (including a sawed off shotgun, shotgun, machine gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles...." As the majority notes, this list is not an exclusive one (*ante* at 787 n. 1), but the nature of the items in the list surely suggests that the universe of "dangerous or deadly weapons" should be limited to external objects commonly associated with the term. *See id.* ("Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only those objects similar in nature to those objects enumerated by the preceding specific words") (footnote omitted) (quoting 2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.17, at 166 (4th ed.1984)). The same rationale that would include teeth within the ambit of "weapons" would certainly include fists and feet, yet would render superfluous the concept of simple assault. *See Commonwealth v. Davis,* 10 Mass.App.Ct. 190, 406 N.E.2d 417 (1980) (holding that teeth could not, as a matter of law, be considered "dangerous weapons").[2]

The District of Columbia recognizes some limits on what can be deemed a weapon. In *Edwards,* the Court of Appeals held that a stationary bathroom fixture, against which the defendant had repeatedly slammed his wife's head, could not be deemed a weapon within D.C.Code § 22–3202. The court recognized that, had Edwards detached the fixture and bludgeoned his wife with it, he would surely have been guilty of using a dangerous weapon. The distinction is a common sense one—a weapon is something with which one can "be armed," something one can pick up and use. Beer bottles, chairs, telephone receivers swung on a cord—all these clearly come within the ordinary mean-

---

**2.** In *Davis,* the court advanced four reasons for rejecting the State's argument that teeth should be considered "dangerous weapons" under the assault statute: (1) No reported decision in Massachusetts had ever held that "human hands, feet or teeth alone can constitute a dangerous weapon." The court stated that this consideration "call[ed] ... for the exercise of judicial restraint in expanding the concept [of dangerous weapons] beyond its traditional scope." *Id.* 406 N.E.2d at 420; (2) "[T]he notion that parts of the

body may be used as dangerous weapons has not been generally accepted elsewhere.... This is so, irrespective of the degree of harm inflicted." *Id.;* (3) Other offenses, such as assault with intent to maim, are sufficient to cover attacks using parts of the body to inflict harm; and (4) The increase in punishment for the use of weapons is partly premised on the fear such weapons induce in victims and on the propensity for the use of a weapon to result in "resistance, conflict and violence...." *Id.* at 422 (citation omitted).

ing of weapons; teeth, however, do not.[3]

I respectfully dissent.

---

3. In *Arthur v. United States*, 602 A.2d 174 (D.C.App.1992), a decision cited by the majority (*ante* at 788), the court held that tennis shoes used to stomp victim's head could be "dangerous weapons" under D.C.Code § 22–3202(a), the statute proscribing assault "while armed with or [had] readily available any ... dangerous or deadly weapon." The court rejected Arthur's argument that the government had to prove that the use of the tennis shoes "caused an injury greater than that which could have been inflicted by a bare hand (or an unshod foot)." *Id.* at 179. The implication is that an unshod foot would not qualify as a weapon.