**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4073**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

ZAKARIA TAOUFIK,

             Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:18-cr-00073-CMH-1)

Submitted:  March 17, 2020                        Decided:  May 12, 2020

Before KEENAN and RUSHING, Circuit Judges, and Thomas E. JOHNSTON, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Rushing and Judge Johnston concurred.

James R. Theuer, JAMES R. THEUER, PLLC, Norfolk, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, Daniel T. Young, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Zakaria Taoufik was convicted of taking an action to prevent or hamper his removal from the United States, in violation of 8 U.S.C. § 1253(a)(1)(C), and of assaulting federal officers, in violation of 18 U.S.C. § 111(a). The district court sentenced Taoufik to a term of 60 months' imprisonment.

On appeal, Taoufik argues that the district court erred: (1) in excluding evidence regarding Taoufik's mental health; and (2) in imposing a sentencing enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for use of a dangerous weapon during an assault. We conclude that the district court did not abuse its discretion in excluding evidence of Taoufik's mental health because the evidence was proffered for an impermissible purpose, namely, to excuse his conduct.

Regarding the dangerous weapon enhancement, the government has abandoned on appeal its argument that Taoufik's saliva, which struck the officers, qualified as a dangerous weapon because Taoufik has an infectious disease. Now, the government maintains simply that Taoufik's use of his teeth and head in attempting to bite and "head butt" the officers qualified as the use of a dangerous weapon. We conclude that the record before us does not support imposition of the dangerous weapon enhancement, and that the district court erred in reaching a contrary conclusion. Thus, we affirm in part, and vacate in part, the district court's judgment and remand for resentencing.

## I.

Taoufik, a citizen of Morocco, entered the United States in 1999 as a lawful permanent resident. In 2010, immigration authorities issued a removal order based on Taoufik's commission of numerous criminal offenses not at issue in this appeal. In October 2017, officers with the United States Immigration and Customs Enforcement (ICE) attempted to remove Taoufik to Morocco. However, Taoufik refused to board the airplane and threatened to "fight" any attempt by the officers to force him onto the plane. The pilot refused to allow Taoufik to board, and he was returned to ICE custody.

In January 2018, immigration authorities again attempted to remove Taoufik to Morocco by placing him on a commercial flight at Dulles International Airport. Taoufik, who was restrained by handcuffs and leg shackles, informed the pilot that he would "not allow [the officers] to put him on the flight," that he would "fight hard," and that he would "make the flight uncomfortable for everyone." Despite these comments, the pilot permitted Taoufik to board the plane accompanied by five ICE officers. As Taoufik proceeded to his seat, he was "making outbursts," calling the officers "liars," and threatening to kill them.

The rear section of the plane had been dedicated to Taoufik and the officers. The officers planned to seat Taoufik in the last row, between Officer Bjorn Cupid and Officer Michael Donato, with Officer Jeremy Thompson seated nearby. When other passengers began boarding the airplane, Taoufik began yelling loudly, asking passengers to take video recordings and photographs of his treatment by the officers. As the officers began to place Taoufik in his seat, he attempted, but failed, to bite Officer Donato. Taoufik also attempted to "ram" his head to strike Officer Donato, who backed away, and attempted to "head butt"

3

Officer Cupid. Taoufik began slamming his head into the back of the seat in front of him, cracking the video screen on the seat. While engaging in this behavior, Taoufik yelled that the officers were "beating him."

Taoufik next unbuckled his seatbelt and attempted to stand, prompting the officers to try to force Taoufik back into his seat. Officer Thompson applied force to a pressure point to subdue Taoufik. In response, Taoufik "gathered a mouthful of saliva and spit directly into" Officer Thompson's face, striking his right eye. Taoufik's saliva also struck the eye and face of Officer Cupid. Based on the disturbance, the pilot directed that Taoufik be removed from the plane. The officers later received medical treatment "for exposure to an infectious disease."

A grand jury charged Taoufik with taking an action to prevent or hamper removal, in violation of 8 U.S.C. § 1253(a)(1)(C), and with assaulting federal officers, in violation of 18 U.S.C. § 111(a). Before trial, the district court ordered an evaluation of Taoufik's competence to stand trial, and later found that Taoufik was competent. Taoufik does not challenge this finding on appeal. The district court also granted Taoufik's motion to appoint as an expert witness the psychologist who had evaluated Taoufik for his competency determination. However, the court deferred ruling at that time regarding whether the psychologist's testimony would be admissible at trial.

The government filed a motion in limine to exclude testimony from the psychologist concerning Taoufik's mental health, including evidence that he suffers from post-traumatic stress disorder (PTSD), mood disorder, personality disorder, anxiety, and depression. The psychologist further had opined that Taoufik's "thought processes are likely . . . marked by

4

confusion, distractibility, and difficulty concentrating," causing Taoufik to "mistrust the motives of others." In opposing admission of this evidence, the government contended that because Taoufik had not asserted a defense of "insanity," he was barred from presenting such evidence to show diminished capacity or justification for his crimes.

Taoufik maintained that the expert testimony would show his "maladaptive behavior patterns," and that he "has difficulty making decisions and perceiving the larger significance of decisions that are made." Taoufik also argued that his PTSD affected "the volitional nature of" his actions. The district court granted the government's motion, holding that such "evidence of diminished capacity" was not admissible except as a mitigating factor at sentencing.

After a one-day trial, a jury found Taoufik guilty on both counts. The probation officer calculated Taoufik's offense level at 27, which included a four-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for use of a dangerous weapon during an assault. Although the probation officer did not identify the factual basis for this enhancement, the government argued that the enhancement was applicable because Taoufik "knew that he had an infectious disease and [that he] transformed his teeth and saliva into dangerous weapons." Taoufik's criminal history category was calculated at V, and the recommended sentencing guideline range was between 120 and 150 months' imprisonment.

Taoufik objected to the four-level enhancement for use of a dangerous weapon. He argued that he "did not intentionally spit at anyone" and that, because had been receiving treatment for his infectious disease in prison, the likelihood of transmission was very low. After conducting a sentencing hearing, the district court overruled Taoufik's objection.

5

The district court imposed a sentence of 60 months' imprisonment, well below the recommended guideline range. Taoufik now appeals.

## II.

Taoufik raises two arguments for our consideration. First, he contends that the district court abused its discretion in excluding evidence regarding his mental health. Second, he argues that the district court erred in applying the four-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for use of a dangerous weapon during an assault. We address these arguments in turn.

### A.

Taoufik first argues that the district court erred by excluding evidence regarding his mental health, including his diagnosis of PTSD. According to Taoufik, his proffered evidence was relevant to the issue whether he had the mens rea necessary to commit the charged offenses. Taoufik maintains that because of his PTSD, "he did not act willfully," which the government had to prove for both the crime of taking an action to prevent removal under 8 U.S.C. § 1253(a)(1)(C), and the crime of assaulting federal officers under 18 U.S.C. § 111(a). We disagree with Taoufik's argument.

We review the district court's evidentiary ruling under an abuse-of-discretion standard. *United States v. Sutherland*, 921 F.3d 421, 429 (4th Cir. 2019). Among other circumstances, a court abuses its discretion when it bases its ruling on an erroneous principle of law. *Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.,* 710 F.3d 527, 533 (4th Cir. 2013).

Under the Insanity Defense Reform Act (IDRA), 18 U.S.C. § 17(a), a defendant is prohibited from asserting "a defense that raises 'any form of legal excuse based upon one's lack of volitional control[,]' including 'a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions.'" *United States v. Worrell*, 313 F.3d 867, 872 (4th Cir. 2002) (quoting *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990)); *see also United States v. Eff*, 524 F.3d 712, 719 (5th Cir. 2008); *United States v. Pohlot*, 827 F.2d 889, 890 (3d. Cir. 1987). Accordingly, a defendant generally may not use psychiatric evidence of a mental condition as an excuse for his conduct. *See Worrell*, 313 F.3d at 873. In rare circumstances, however, such evidence may be relevant to "negate[] an essential element of the government's *prima facie* case."[1] *Id.* at 873-74 (citation omitted).

One such example of admissible psychiatric evidence involved a defendant who was charged with threatening to shoot an officer and who denied making that threat. *Id.* (discussing *United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977)).[2] The Seventh Circuit reversed the district court's ruling excluding evidence that the defendant suffered from a mental condition and, therefore, probably could not have engaged in such aggressive conduct. *Staggs*, 553 F.2d at 1076. "In other words, [the defendant] was offering the

---

[1] "[P]sychiatric testimony regarding a defendant's mental condition" also may be admissible if relevant "to disprove specific intent for specific intent crimes." *Worrell*, 313 F.3d at 873; *see infra* at 7 n.3.

[2] As we explained in *Worrell*, "*Staggs* was overruled on grounds unrelated to this discussion." 313 F.3d at 874 n.3.

psychiatric evidence to show he did not do it, not that he could not help it." *Worrell*, 313 F.3d at 874. However, apart from this narrow category of admissible psychiatric evidence, most efforts to introduce psychiatric evidence in the absence of an insanity defense fall within the impermissible category of "diminished capacity evidence or some other form of justification in disguise." *Id.* at 873.

We conclude that Taoufik's proffered evidence plainly qualifies as an impermissible attempt to excuse his conduct. Although the jury was instructed that Taoufik had to have acted "willfully" to be convicted of each charged offense, the jury further was instructed that

> a person[] acts willfully, as that term is used in these instructions, when that person acts deliberately, voluntarily, and intentionally and not by a mistake or accident.

By arguing that PTSD affected his ability to act "willfully," Taoufik necessarily contended that that he was unable to act "deliberately, voluntarily, and intentionally."[3] Indeed, Taoufik emphasized to the district court that his proffered evidence bore on "the volitional nature of" his actions. This argument lacks any merit because the language of the IDRA "leaves no room for a defense that raises any form of legal excuse based upon one's lack of volitional control," including "a diminished ability or failure to reflect

---

[3] The plain language of the jury instruction belies Taoufik's argument that the government was required to prove a specific intent element that Taoufik acted "with a bad purpose." Instead, the instruction required that the government simply show that Taoufik acted intentionally and not "by mistake or accident." *See Oxygene v. Lynch*, 813 F.3d 541, 548 (4th Cir. 2016) (explaining that an "intent to perform an act" describes "general intent" (citation omitted)).

adequately upon the consequences or nature of one's actions." *Worrell*, 313 F.3d at 872 (citation omitted).

Applying this general rule, we conclude that this is not the "rare" case in which psychiatric evidence would have aided a fact finder in determining whether Taoufik committed the charged offenses. *Id.* at 874. Instead, Taoufik's proffered evidence merely reflected an attempt to present evidence to excuse his conduct, a purpose plainly barred by the IDRA. Accordingly, we hold that the district court did not abuse its discretion in excluding Taoufik's proffered psychiatric evidence.

## B.

We next consider the question whether the district court erred in applying a four-level sentencing enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for use of a dangerous weapon during an assault. As noted above, the government has abandoned its prior argument that Taoufik's saliva qualified as a dangerous weapon, conceding that "the record contains no evidence about whether [Taoufik's] disease is transmissible via saliva." Instead, the government submits that we can affirm the district court's application of the enhancement on alternative grounds, namely, that Taoufik's teeth and skull qualify as dangerous weapons because Taoufik attempted "to bite and head butt the officers."[4] We disagree with the government's argument.

---

[4] *See United States v. Steffen*, 741 F.3d 411, 415 (4th Cir. 2013) (explaining that with respect to applicability of sentencing enhancements, "we are not confined to the district court's analysis but may affirm the court's ruling on any evidence appearing in the record").

9

The issue whether an object qualifies as a dangerous weapon presents a question of fact. *See United States v. Sturgis*, 48 F.3d 784, 788 (4th Cir. 1995) (explaining that whether an object was used as a dangerous weapon presents a factual issue and is not subject to routine application as a question of law). Because of the factual nature of this issue, "we apply the clear error standard in reviewing whether a preponderance of the evidence supported imposition of the enhancement." *United States v. Steffen*, 741 F.3d 411, 415 (4th Cir. 2013).

Under U.S.S.G. § 2A2.2(b)(2)(B), a defendant is subject to a four-level enhancement when "a dangerous weapon (including a firearm) was otherwise used" during an assault. The term "[d]angerous weapon" is defined as

> (i) an instrument capable of inflicting death or serious bodily injury; or
> (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but . . . the defendant used the object in a manner that created the impression that the object was such an instrument (*e.g.* a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 1B1.1 app. n.1(E).

The application notes to U.S.S.G. § 2A2.2 further explain that the term "[d]angerous weapon" also "includes any instrument that is not ordinarily used as a weapon (*e.g.*, a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2 app. n.1. The term "bodily injury" means "any significant injury," such as "an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. §§ 1B1.1 app. n.1(B), 2A2.2 app. n.1.

10

We previously have addressed whether a defendant's teeth qualified as a dangerous weapon used to assault officers, as prohibited by former 18 U.S.C. § 113(c).[5] *Sturgis*, 48 F.3d at 785, 787 (citing as helpful authority the definition of "dangerous weapon" under the guidelines). In *Sturgis*, the defendant, who was HIV positive, "aggressively bit two correctional officers" who were attempting to restrain him during an altercation. *Id.* at 785, 788. Sturgis' bites on the officers each lasted "four or five seconds" and resulted in wounds that bled heavily and required medical attention. *Id.* Under these circumstances, we held that regardless whether Sturgis could have transmitted his disease by his conduct, a jury reasonably could conclude that his "mouth and teeth" were used as a dangerous weapon because he used those body parts to cause injuries akin to puncture wounds inflicted by a knife. *Id.* at 785, 788-89; *see also United States v. Bryant*, 949 F.3d 168, 181-82 (4th Cir. 2020) (citing *Sturgis*, 48 F.3d at 788).

In contrast, Taoufik did not inflict any injuries, let alone serious injuries, on the officers by use of his teeth or his skull. In fact, as reflected by the record, Taoufik's actions attempting to bite and "head butt" the officers did not result in any physical contact with them. Taoufik boarded the airplane in handcuffs and leg shackles, warning that he would "fight hard" and "make the flight uncomfortable for everyone." Taoufik begged passengers to record his actions, pretending that the officers were "beating" him, as Taoufik cracked a video screen with his head. While the officers held Taoufik in his seat, Officer Thompson

---

[5] This provision now is codified at 18 U.S.C. § 113(a)(3). *See United States v. Bryant*, 949 F.3d 168, 181 (4th Cir. 2020).

observed Taoufik trying to bite Officer Donato on the hand. And, as Officer Donato and Officer Cupid held Taoufik on each side in his seat, Taoufik "tried to head butt" Officer Donato and Officer Cupid.

We know of no precedent, nor has the government cited any, in which a defendant's mere attempt to bite or attempt to strike another with one's head qualified as the use of a dangerous weapon. Although Taoufik's attempts to bite and "head butt" the officers were evidence of an intent to harm them, those attempts did not establish by a preponderance of the evidence that he inflicted serious bodily injury on the officers with his teeth and head. Thus, the clear error standard is met in this case. *See Steffen*, 741 F.3d at 414. Accordingly, we conclude that the record lacks any factual basis to support application of the dangerous weapon enhancement, and we vacate Taoufik's sentence.

### III.

For these reasons, we affirm the district court's evidentiary ruling excluding testimony regarding Taoufik's mental health. We vacate the district court's application of the sentencing enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for use of a dangerous weapon during an assault, and remand the case to the district court for resentencing.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

12